1 | PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

2 | Name  HORNE    Joseph    D.
        (Last)        (First)        (Initial)

3 | Prisoner Number  V-84328

4 | FILED

Institutional Address  K.V.S.P.  P.O. Box-5102

5 | MAR 24 2008

Delano, CA 93216

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

6 | ======================================

7 | UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8 | MR. Joseph Horne )
(Enter the full name of plaintiff in this action.) )

9 | )
                                    )    Case No. 4:07-cv-04592-SBA
      vs.                           )    (To be provided by the clerk of court)

10 | Robert Horel, warden )

11 | )    PETITION FOR A WRIT
      _____ )    OF HABEAS CORPUS

12 | _____ )

13 | _____ )    "FIRST AMENDED
                                        COMPLIANT"

14 | _____ )
(Enter the full name of respondent(s) or jailor in this action) )

15 |

16 | ======================================
Read Comments Carefully Before Filling In

17 | When and Where to File

18 |         You should file in the Northern District if you were convicted and sentenced in one of these

19 | counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 | San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

21 | this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 | good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

23 |         If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 | one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 | District Court for the district in which the state court that convicted and sentenced you is located.  If

26 | you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 | your petition will likely be transferred to the district court for the district that includes the institution

28 | where you are confined.  Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS            - 1 -

1  Who to Name as Respondent

2        You must name the person in whose actual custody you are.  This usually means the Warden or

3  jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5  respondents.

6        If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11        1.  What sentence are you challenging in this petition?

12            (a)    Name and location of court that imposed sentence (for example; Alameda

13                   County Superior Court, Oakland):

14            Monterey county superior court,
               salinas.
15                   Court                                Location

16            (b)    Case number, if known  SS030908

17            (c)    Date and terms of sentence  April 28th 2007 (see attache)

18            (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19                   parole or probation, etc.)     Yes  ✓    No ____

20                   Where?

21                   Name of Institution:  Kern Valley state prison

22                   Address:  P.O. Box - 5102 / Delano, CA 93216

23        2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26        Please see Attached page Labeled

27        "Attached document to Federal writ."

28

PET. FOR WRIT OF HAB. CORPUS          - 2 -

3. Did you have any of the following?

    Arraignment:                            Yes  ✓    No _____

    Preliminary Hearing:               Yes  ✓    No ✓

    Motion to Suppress:              Yes  ✓    No _____

4. How did you plead?

    Guilty _____    Not Guilty ✓    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury ✓    Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?            Yes ✓    No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment               Yes ✓    No _____

    (b)    Preliminary hearing       Yes ✓    No _____

    (c)    Time of plea             Yes ✓    No _____

    (d)    Trial                   Yes ✓    No ✓

    (e)    Sentencing              Yes ✓    No _____

    (f)    Appeal                 Yes ✓    No _____

    (g)    Other post-conviction proceeding    Yes ✓    No _____

8. Did you appeal your conviction?       Yes ✓    No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal           Yes ✓    No _____

        Year: 2007        Result: affirmed

        Supreme Court of California    Yes ✓    No _____

        Year: 2007        Result: affirmed

        Any other court           Yes _____    No ✓

        Year: _____     Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS    - 3 -

petition?                                                      Yes ✓    No____

(c)    Was there an opinion?                          Yes ✓    No____

(d)    Did you seek permission to file a late appeal under Rule 31(a)?

Yes ____    No ✓

If you did, give the name of the court and the result:

_____

_____

9.  Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?                          Yes ____    No ✓

[Note:  If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition.  You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit.  28 U.S.C. §§ 2244(b).]

(a)    If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding.  Attach extra paper if you need more space.

I.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____ Date of Result:_____

II.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____ Date of Result:_____

III.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____ Date of Result:_____

IV.    Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a._____

b._____

c._____

d._____

Result: _____ Date of Result:_____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No__✔__

Name and location of court: _____

B.  GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully.  Give facts to
support each claim.  For example, what legal right or privilege were you denied?  What happened?
Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS            - 5 -

1  need more space.  Answer the same questions for each claim.

2    [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3  petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467,  111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5    Claim One: "Please See Additional Page"

6    _____

7    Supporting Facts: "Please see Additional Page"

8    _____

9    _____

10    _____

11    Claim Two: "Please See Additional Page"

12    _____

13    Supporting Facts: "Please see Additional Page"

14    _____

15    _____

16    _____

17    Claim Three: "Please See Additional Page"

18    _____

19    Supporting Facts: "Please see Additional Page"

20    _____

21    _____

22    _____

23    If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25    _____

26    _____

27    _____

28    _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    Nix v. Whiteside (1986) 475 U.S. 157, 89 L.Ed 2d 123

5    United States v. Cronic (1984) 466 U.S. 648

6    "See Attached Document."

7    Do you have an attorney for this petition?    Yes____    No____

8    If you do, give the name and address of your attorney:

9    _____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on  3/17/08                    [signature]

14            Date                    Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 7 -

Attached Document to federal writ of
Habeas corpus. continue page #2.
Section (1) part (c).

The court imposed a term of life
without parole for the murder (count #1)
plus a consecutive indeterminate
life term for using a firearm; a con-
secutive indeterminate life term
for attempted murder (count #2) plus
a 20 year firearm enhancement; a
consecutive life term for shooting
at an occupied vehicle (count #6); a
consecutive life term for shooting
at an occupied dwelling (count #8); a
consecutive determinate term of
3 years for selling drugs (count #7)
plus a 4 year gang enhancement; and
a consecutive 8 month term for
making a consecutive criminal
threat (count #5). The court imposed
additional terms and enhancements
but stayed them under section 654.

(8)

1  Attached Document to Federal writ
2  of Habeas corpus.
3  continue Additional page for page
4  two.
5  enhancements (245, subd. (a) (2) ,186.22 ,
6  subd. (b) (1) ).


RT PAPER
: OF CALIFORNIA
I 13 (REV. 3-95)
98 10924

Attached document to federal writ of
Habeas corpus.
continue page (2). part (2)
count one, murder with a criminal
street gang" special circumstance and
enhancements for discharging a fire-
arm and causing great bodily injury
and death and committing street
gang — the offense for the benefit
of a criminal street gang. (Pen. code
187, 186.22, subd. (b)(1), 190.2, subd. (a)(22),
12022.53, subd. (c) and (d); count two,
attempted murder with gang and
firearm discharge enhancements
(664, 187, 186.22, subd. (b)(1)); count five — three
assault with a firearm with a gang
enhancement (245, subd. (a)(2), 186.22, subd. (b)
(1)); count five, Making criminal threats
(422); count six, shooting at an occupied
vehicle with a gang enhancement
(246, 186.22, subd. (b)(1)); count seven, sale or
transportation of a controlled substance
with a gang enhancement (Health & safety
code 11352, 186.22, subd. (b)(1)); count eight,
shooting at an inhabited dwelling w/gang
enhancements (246, 186.22, subds. (b)(1) & (b)(4)(B);
count nine, assault with a firearm w/a gang

RT PAPER
OF CALIFORNIA
113 (REV. 3-95)

1  Attached document to federal writ
2  of habeas corpus.
3  continue page (6) claim one.
4  Trial defense counsel rendered
5  ineffective assistance of counsel
6  when he failed to represent
7  petitioner during cross-examina-
8  examination. by the prosecutor.
9
10
11  continue supporting facts for
12  claim one:
13  Trial defense counsel refuse to
14  participate during cross examin-
15  ation of the defendant at trial be-
16  cause of an alleged ethical obligation.
17      He sat mute the entire time
18  the defendant was undergoing cross
19  examination by the prosecutor.
20      In the direct court of appeals
21  opinion they (the Honorable Judges)
22  ruled that trial counsel, if fact, did not
23  participate and rendered ineffective
24  assistance of counsel.
25      This violated petitioner's 6th Amend-
26  ment right to counsel. under United v. -
27  United States v. Cronic (1984) 466 U.S. 648

(11)

1  Attached document to federal writ
2  of Habeas corpus.
3  continue additional page of claim one
4  <u>supporting facts</u>.
5  denial of counsel at a critical stage
6  of trial is a violation of the U.S.
7  const. and can not be harmless.
8      Petitioner underwent cross-
9  examination in the united states
10 of America absent trial counsel.
11     Petitioner was not represent-
12 ing himself. Thus, under the 6th
13 Amendment should have been protect-
14 ed by effective counsel.
15     The court of Direct Appeal ruled
16 that trial counsels actions were not
17 a defense tactic.
18     I received an unfair trial.
19
20
21
22
23
24
25
26
27

RT PAPER
OF CALIFORNIA
113 (REV. 3-95)
98 10924

1  Attached Document to Federal Writ
2  of Habeas Corpus.
3  Continue page (6) Claim Two.
4     Trial counsel rendered ineff-
5  ective assistance of counsel when
6  he refused to present Petitioner's
7  direct examination by normal quest-
8  ion and answer method; instead
9  defense counsel did not participate
10 in direct examination;
11
12
13 Continue Supporting facts of
14 claim two:
15 Trial counsel told the court that he
16 could not present Petitioners direct
17 examination due to an ethical obl-
18 igation.
19    Trial counsel did not present
20 Petitioner was forced to give narr-
21 ative testimony absent counsel.
22    In declarations of trial counsel
23 and defendant's it shows that trial
24 counsel did not have an ethical obligat-
25 ion. Thus, had no-legs-legitimate
26 reason to temporarily discontinue
27 his representation while Petitioner

RT PAPER
OF CALIFORNIA
113 (REV. 3-95)
98 10924

1  Attached Document of Federal writ
2  of Habeas corpus.
3  continue additional page of supporting
4  facts of claim Two.
5  took the Stand. (Please view attached
6  declarations of Attorney Robert T.
7  Hutcher and defendant Joseph Home.)
8      The following cases support my
9  claim. Nix v. Whiteside (1986) 475 U.S.
10  157, 171, 89 L.Ed 2d. /People v. Guzman (1988)
11  45 cal. 3d 915.
12      A defendant may be required to
13  testify by narrative summary but
14  "only" if he has admitted guilt to his
15  lawyer...and wish to give testimony
16  contrary to the truth.
17      At no time did petitioner admit
18  any guilt. NOR, did petitioner tell trial
19  counsel that he wish to testify con-
20  trary to any truth. NOR, did counsel
21  possess any evidence that petition-
22  er was lying or was going to lie
23  under oath.
24      Thus, petitioner maintained his
25  6th Amendment const. Right to counsel.
26  Trial counsel was obligated to effect-
27  ively assist Petitioner in all parts

RT PAPER
E OF CALIFORNIA
113 (REV. 3-95)
98 10924

Attached documents of federal writ
of Habeas corpus.
continue Additional page of supporting
Facts of claim two.
Of trial. under United States v. Cronic
(1984) 466 U.S. 648 "All defendants have a
right to effective assistance of couns-
el and denial of this right at a
critical stage can not be harmless".
        I was denied counsel during
direct examination. I had no rep-
resentation during the most critical
stages of a trial.
        My 6th Amendment right to counsel
was violated. I was deprived of
counsel. The const. was ignored.
        I received an unfair trial.

1  Attached Documents of federal writ
2  of Habeas corpus.
3  continue claim (3). page 6.
4  Defense counsel rendered ineff-
5  ective assistance by failing to object
6  to the verdict and sentence for the
7  premeditated aspect of attempted
8  murder on grounds that the enhance-
9  ment of premeditation was not
10 pleaded as required.

11

12

13 continue supporting facts for claim
14 3:
15 Petitioner was convicted and sent-
16 ence on the charge of the premedit-
17 ated aspect of attempted murder
18 without ever receiving notice and
19 of such charge.
20 The requirement of notice of all charges
21 brought against anyone in the united
22 states has been long established.
23     This violated my 6th, 5th and 14th
24 amendment.
25     Petitioner never pled to such charge
26 and never was notified that such
27 charge was against him.

RT PAPER
t OF CALIFORNIA
113 (REV. 3-95)
98 10924

(16)

1  continue page 7 of federal writ of
2  Habeas corpus.
3  cases to support claims one and
4  two:
5  Nix v. whiteside (1986) 475 U.S. 157, 89
6  L.Ed 2d 123.

7
8  united states v. cronac (1984) 466 U.S. 648
9  659.
10 People v. Benavides (2005) 35 cal. 4th 69, 86
11 Strickland v. washington (1984) 466 U.S. 668, 688.

12
13 cases to support claim 3
14 Jones v. smith (9th cir. 2000) 231 F. 3d
15 1227
16 Apprendi v. New Jersey (2000) 530 U.S.
17 436.
18
19
20
21
22
23
24
25
26
27

RT PAPER
OF CALIFORNIA
113 (REV. 3-95)
98 10924

# EXHIBIT COVER PAGE

EXHIBIT

Description of this Exhibit:

"Declaration of petitioner"

Number of pages to this Exhibit: __4__ pages.

JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [x] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury

1  State Address
2  Joseph D. Horne
3  V-84328
4  P.B.S.P.
5  P.O. Box - 7500
6  Cresent City, CA 95532
7
8
9      In The United States District
10     Court for the Northern District
       of California.
11
                                    Civil
12  Joseph D. Horne          Case no. C07-4592-SBA
13              Petitioner,   Declaration of
                              Petitioner
14  V.                        Joseph Horne.
15  Robert Horel, Warden
16          Respondent,
17

18     I, Joseph Horne, being duly sworn,
19  declares and states:
20     (1). I was partially represented by
21  Attorney Robert T. Hatcher in the
22  trial of the current case I being
23  in front of the Federal court.
24     (2.) At no time, before or during
25  trial, did I express any guilt to
26  Mr. Hatcher. At no time did my des-
27  cription of events change. At no time

                                    Page 1-4

1 continue Declaration of Petitioner.
2 did I express to MR. Hatcher that
3 I wish to perjure myself. At all times
4 I expressed my innocence.
5    (3.) At no time, before I advised
6 MR. Hatcher at trial that I have deci-
7 ded to take the Stand, did MR. Hatcher
8 express to me that he had any doubts
9 about my alibi for any reason or
10 that he felt I-implicat-implicitly
11 admitted guilt to any charge.
12    (4). MR. Hatcher and Barry St. Clare
13 (My investigator) were both notified
14 of my desire to testify. Repeatedly.
15 This notification came well before
16 trial began. MR. Hatcher Repeatedly told
17 me I should think about it. My final
18 decision was made and brought to
19 My attorney's attention right before
20 the close of the defense case.
21    (5.) When MR. Hatcher and Barry
22 St. Clare spoke with me in a closed
23 session MR. Hatcher (At trial) expressed
24 Quote: "She will kill you on CROSS..."
25 Quote: "She will eat you alive... It will
26 be murder." I took these comments as
27 a "Scare tactic" by an attorney who was

RT PAPER
OF CALIFORNIA
113 (REV. 3-95)
1B 10924

continue declaration of petitioner. physically ill and had been hospitalized during trial and just wanted the trial to be over.

(6.) Knowledge about an alleged comment made by me "so what, if things happen that way?" is completely made up. And the attorney made the fact that the statement was fabricated obvious. When he said quote "or something like that." He's telling us that he's not sure what was said but he's sure it was an implicitly admitted guilt to a charge that carries life?

(7.) There were accusation made in open court by the prosecutor at the preliminary hearing, that my state appointed investigator was involved in having witnesses shot at. There was an order made by the Honorable Judge sellman for Barry St. Clair to stay away from witnesses.

(8.) Because of this, witnesses express to my lawyer, my investigator and myself that they would not talk to my defense team due to fear of their lives. My entire defense team was

RT PAPER
OF CALIFORNIA
113 (REV. 3-95)
98 10924

1 continue Declation of person-petition-
2 er.
3 aware of this. The witnesses that had
4 no choice but to talk only did it
5 because of court order and the inter-
6 views were conducted at the D.A.'s
7 office.
8    (9.) MR. Hatcher has lied and mis-
9 led the courts of justice. And attempt-
10 s to continue in his declaration.
11    I declare under penalty of per-
12 jury the foregoing is true and cor-
13 rect, except as to allegations made
14 on information and belief, and as to
15 those. I believe them to be true.
16
17    Executed at <u>cresent city</u> california
18 on <u>9/22/07</u>
19
20                    John M
21                    Joseph Horne
22                    Petitioner,
23
24
25
26
27


RT PAPER
OF CALIFORNIA
I 13 (REV. 3-95)
98 10924

Page 4-4

# EXHIBIT COVER PAGE

EXHIBIT

Description of this Exhibit:

"The direct court of appeals opinion on IAC claim."

Number of pages to this Exhibit: __18__ pages.

JURISDICTION: (Check only one)

☐ Municipal Court
☐ Superior Court
☐ Appellate Court
☐ State Supreme Court
☑ United States District Court
☐ State Circuit Court
☐ United States Supreme Court
☐ Grand Jury

Defendant' reliance on *People v. Alcala* (1992) 4 Cal.4th 742 and *Carlston v. Shenson* (1941) 47 Cal.App.2d 52 is misplaced. Neither case suggests that the court has a sua sponte duty to intercede during cross-examination in the absence of an objection.

Certainly, a trial court must control trial proceedings, including the introduction and exclusion of evidence; maintain order and decorum; and safeguard both the rights of the defendant and the interests of the state so that fairness and justice prevail. (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237.) Evidence Code section 765 and section 1044 authorize and require the court to do so. Thus, we do not mean to suggest that the court sits as an idle spectator during cross-examination. (See *Gantner v. Gantner* (1952) 39 Cal.2d 272, 278 ["A trial judge is not a mere passive spectator at the trial"]; e.g., *People v. Ponce* (1996) 44 Cal.App.4th 1380, 1388-1389; *Smith v. Superior Court* (1968) 68 Cal.2d 547, 559.) However, a court must be careful about interceding and not "throw the weight of his judicial position into a case, either for or against the defendant." (*People v. Mahoney* (1927) 201 Cal. 618, 627.)

Here, the court was not idle. It interceded numerous times to bar questions by the prosecutor that it found to be argumentative. Under the circumstances, we do not find that the court abused its discretion by not interceding more often.

### Ineffective Assistance of Counsel

To obtain reversal due to ineffective assistance, defendant must first show "that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney . . . ." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1003; *Strickland v. Washington* (1984) 466 U.S. 668, 688.) Where the record on direct appeal "does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation." (*People v. Anderson* (2001) 25 Cal.4th 543, 569.) Second, defendant's must show that there is "a reasonable probability that defendant would have obtained a more favorable result absent counsel's

25

shortcomings." (*People v. Cunningham, supra,* 25 Cal.4th at p. 1003.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra,* 466 U.S. at p. 694; *People v. Staten* (2000) 24 Cal.4th 434, 450-451.)

Here, counsel did not explain on the record why he raised no objections during cross-examination. The Attorney General claims that counsel had sound tactical reasons for not doing so. He argues that many of the challenged questions were within the scope of proper cross-examination on matters that defendant had raised during his direct testimony, and therefore defense counsel reasonably could have determined that an objection would have been overruled. The Attorney General further argues that counsel also may have declined to object also because he did not want to draw undue attention to defendant's answers, make it appear that defendant had something to hide, or suggest that defendant was afraid or incapable of answering the various questions.

As a general proposition, "competent counsel may often choose to forgo even a valid objection. '[I]n the heat of a trial, defense counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings. . . . .' [Citation.]" (*Riel, supra,* 22 Cal.4th at p. 1197, fn. omitted.) Consequently, "[t]he decision of when to object is inherently tactical, and the failure to object will seldom establish incompetence." (*People v. Scott* (1997) 15 Cal.4th 1188, 1223.) Here, however, we find these generalizations inapposite.

Before defendant testified, defense counsel was very attentive during the examination of every other witness and regularly objected on grounds of hearsay, relevance, speculation, repetition, and argumentation. When defendant testified, counsel was mute, despite questions that could have been challenged as compound,

26

argumentative, irrelevant, speculative, or lacking foundation.[11]  Moreover, the Attorney General does not argue that *every* question was proper, and, as noted, the court blocked several argumentative questions.  Finally, after defendant testified, defense counsel resumed making objections.

Under the circumstances, the record does not reasonably support a finding that counsel made a tactical decision to avoid any and all possible objections regardless of potential merit.  Indeed, we consider such a "tactical" explanation to be implausible and unreasonable.  Rather, we are satisfied that the reason counsel remained silent was the belief that his ethical obligation not to participate during defendant's direct examination extended to cross-examination.  Consequently, we shall evaluate the propriety of counsel's decision not to participate during cross-examination.  To do so, however, we

---

[11]  For example, the prosecutor asked the following questions: "Seaside Mob is a criminal street gang, is that correct?"  "Now, the commitment to the California Youth Authority was only after the arrest July 9, 1997, in Seaside, correct?"  "That's when the officers—that's when the officers found a sawed off .22 caliber rifle, a box of ammunition for the rifle, a ski mask and rubber gloves in your room right?"  "All right.  Isn't it true that with respect to the victims of the crimes that you committed, you were found to be self-centered and narcistic [sic]?"  "Hypothetically, a gang crime is committed by a gang member.  Do you think that's going to be a hard case to prosecute?"  "Well, the real evil of witness intimidation when it comes to gangs is there is so many people that can try to influence a witness, not just the perpetrator, would you agree?"  "But I understand all the killings were senseless.  Certainly the killing of Jason Ewing was senseless. [¶] But gangs do senseless things for a number of reasons to benefit their gang, right?  "Now, when gang members commit crimes and are questioned by the police about these crimes, often they will lie to the police, correct?"  "And when gang members commit crimes, in addition to lying, sometimes they will misinform the police; they will point to someone and send the police on a wild goose chase, right?"  "In the movie Rocky, I guess that's what he was doing, right?  He went around to collect debts and broke people's arms or broke arms?"  "Now, wasn't Michael Fowler a Mob Enforcer?"  "Well in that picture—come on.  You've seen that picture now for about two years.  You've known for two years it's a Glock, right?"  "And that's the story that every gang member going back for generations in Seaside tells police when they describe a gang killing; it's over a girl, right?"

shall first explain why defense counsel may properly decline to participate in a client's direct examination.

In *People v. Guzman* (1988) 45 Cal.3d 915 (*Guzman*), overruled on another point in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, footnote 13, the California Supreme Court implicitly approved letting a defendant testify with a free narrative when he or she takes the stand against the advice of counsel. There, the defendant claimed the procedure denied him effective assistance of counsel and forced him to waive his right to counsel and represent himself. (*Guzman, supra*, 45 Cal.4th at pp. 942, 946.) The Supreme Court disagreed.

The court explained that a defendant has no constitutional right to give false testimony, and defense counsel has an ethical obligation as an officer of the court to refuse to suborn perjury. (*Guzman, supra*, 45 Cal.3d at p. 943, citing *Nix v. Whiteside* (1986) 475 U.S. 157.) Next, the court observed that the United States Supreme Court had not established what defense counsel should do when he or she believes his client is lying, or will do so on the stand, and the California Rules of Professional Conduct do not prohibit free narrative testimony without the assistance of counsel. Thus, the court analyzed whether that the use of that approach had denied the defendant effective assistance of counsel. (*Guzman, supra*, 45 Cal.3d at p. 944.)

The court found that counsel's conduct "closely followed that formerly prescribed by the American Bar Association (ABA) Project on Standards for Criminal Justice, Standards Relating to the Defense Function (Approved Draft 1971) standard 7.7. That standard recognize[d] that, although counsel need not elicit what he thinks will be perjured testimony, an accused has an absolute right to testify over counsel's objection."[12] (*Guzman, supra*, 45 Cal.3d at p. 944, fn. omitted.) The court also noted

---

[12] Rule 5-200 of the California Rules of Professional Conduct provides, "In presenting a matter to a tribunal, a member:  [¶] (A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with

that although the United States Supreme Court did not favor the free narrative approach, it had not condemned it as ineffective assistance. (*Ibid.*) The court further cited cases approving an attorney's " 'passive refusal to lend aid to what is believed to be perjury' " which would include counsel's accepting a free narrative approach. (*Id.* at pp. 945-946.) In short, the court opined that the approach represented defense counsel's "best effort" to reconcile his duty to his client as defense counsel with his ethical obligation as an officer of the court. Accordingly, the court found no ineffective assistance. (*Id.* at p. 946.)

The court also concluded that defendant had not been forced to represent himself. "Defendant was 'forced' to represent himself only with respect to his own direct testimony. Counsel was available for and participated in all other stages of the trial. Therefore, it was not necessary that the trial court's warnings about the dangers of self-representation be as complete as would be necessary for a defendant who sought to conduct his entire defense. More important, the court expressly advised defendant of the dangers of the free narrative approach. Defendant understood the dangers and had time to consider them before he insisted on testifying." (*Guzman, supra*, 45 Cal.3d at p. 945.)

In *People v. Gadson* (1993) 19 Cal.App.4th 1700 (*Guzman*), the defendant testified using free narrative against counsel's advice. (*Id.* at p. 1705-1708.) On appeal, he claimed ineffective assistance because counsel acceded to his request to testify. Moreover, he claimed he was denied the right to counsel because he had to represent himself during direct examination, even though he had not asked to do so. (*Id.* at p. 1709.)

The court found that defense counsel was required to allow the defendant to testify because the defendant had an absolute right to testify over the objection of counsel. The court further opined that "defense counsel's refusal to participate in the presentation of perjurious testimony from the accused does not deny the client effective assistance of

---

truth;  [¶] (B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law; . . ." (See also Bus. & Prof. Code, §§ 6077, 6068, subd. (d).)

counsel." (*Gadson, supra*, 19 Cal.App.4th at p. 1710.) Relying on the analysis in *Guzman*, the court concluded that the free narrative approach "properly reconciled the competing interests which intersected in this situation. Defendant was able to testify on his own behalf; trial counsel refrained from actively participating in the presentation of false testimony; defendant was still afforded the assistance of trial counsel; and the integrity of the adversarial system of justice was not compromised." (*Id.* at p. 1711; see *People v. Johnson* (1998) 62 Cal.App.4th 608, 630 [following *Guzman* and *Gadson*]; *People v. Jennings* (1999) 70 Cal.App.4th 899, 907 [following *Gadson*].)

These cases establish that an attorney has an ethical obligation to avoid eliciting false testimony and therefore may have to refrain from participating in a client's direct examination. However, in the context of *cross-examination*, a defense attorney does not elicit the defendant's testimony. Indeed, none of the proposed objections here would have involved defense counsel in eliciting potentially perjurious testimony. Rather, during cross-examination, a defense counsel performs adversarial and protective functions. In particular, counsel makes sure that the prosecutor plays by the rules of evidence and asks only proper questions; counsel helps keep prejudicial material and inadmissible evidence from the trier of fact; and counsel preserves claims of evidentiary error by the court and prosecutorial misconduct for appeal.[13] Thus, although a defense attorney's ethical obligation may justify nonparticipation during his client's direct examination, it does not necessarily or reasonably justify nonparticipation during cross-examination.

Indeed, in *People v. Nakahara* (2003) 30 Cal.4th 705, the Supreme Court

---

[13] Conceivably, there may be some gray areas of cross-examination, where a defense attorney, scrupulously attuned to his or her ethical obligation, could worry that a particular objection might connect him to perjurious testimony—e.g., an objection on the ground that the prosecutor's question has misstated defendant false testimony. In such a situation, we believe that counsel reasonably could decline to object without implicating the client's right to effective assistance of counsel.

implicitly assumed that a defense attorney's ethical obligation does not disable him or her from participating during cross-examination. There, defense counsel declined to participate during direct. On appeal, the defendant claimed that he had not been advised that he had to waive his right to counsel before giving narrative testimony, and he did not waive it. (*Id.* at p. 716-717.) The Supreme Court observed that "any such 'waiver,' and the consequent absence of counsel, was limited to defendant's narrative statement itself, as his counsel was fully available before and after the statement was given, *including cross-examination.*" (*Id.* at p. 717, italics added; see also, e.g., *Com. v. Mitchell* (2003) 781 N.E.2d 1237, 1245 [permitting objections during cross-examination]; *People v. DePallo* (2001) 754 N.E.2d 751, 752 [same].)

"[T]he burden of proof that the defendant must meet in order to establish his entitlement to relief on an ineffective-assistance claim is preponderance of the evidence." (*People v. Ledesma* (1987) 43 Cal.3d 171, 218.)  Given our discussion, we find that defendant has shown by a preponderance of the evidence that counsel's conduct during cross-examination fell below an objective standard of reasonableness: He declined to participate during cross-examination because he erroneously believed that his ethical obligation prevented him from raising objections to the prosecutor's questions. Thus, we turn to the issue of prejudice.

Defendant lists over 40 allegedly improper questions and 80 objections to them that counsel should have made. As noted, to establish prejudice from counsel's omission, defendant must demonstrate a reasonable probability that the some or all of the objections would have been sustained and that he would have obtained a more favorable result had the objections been made and sustained. (*Strickland v. Washington, supra,* 466 U.S. at pp. 688, 694.)

Defendant does not argue the merits of most of the objections that he claims should have been made. He simply notes the question and lists the grounds for objection.

31

As we discuss below, most of defendant's objections would have been overruled; and as to those that had merit, counsel's omissions were harmless.

Defendant's primary substantive complaints concern gang-related questions, improper impeachment, hearsay, and relevance.

Before discussing those complaints, we note that when a defendant elects to take the stand, the prosecutor is entitled to disprove his or her direct testimony. (*People v. Rowland* (1992) 4 Cal.4th 238, 275.) To this end, the trial court must afford the prosecutor wide latitude during cross-examination, especially on the issue of credibility, and allow questions on any matter within the scope of direct examination. (*People v. Harris* (2005) 37 Cal.4th 310, 335; *People v. Guttierrez* (2002) 28 Cal.4th 1083, 1148; *Curry v. Superior Court* (1970) 2 Cal.3d 707, 715; see Evid. Code, §773.)[14]

In *People v. Chatman* (2006) 38 Cal.4th 344, the court explained, "The permissible scope of cross-examination of a defendant is generally broad. 'When a defendant voluntarily testifies, the district attorney may fully amplify his testimony by inquiring into the facts and circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them. [Citation.] A defendant cannot, by testifying to a state of things contrary to and inconsistent with the evidence of the prosecution, thus indirectly denying the testimony against him, but without testifying expressly with relation to the same facts, limit the cross-examination to the precise facts concerning which he testifies. [Citation.]' [Citation.]" (*Id.* at p. 382, quoting *People v. Cooper* (1991) 53 Cal.3d 771, 822.)

With this in mind, we observe that during his narrative testimony, defendant responded to the prosecution's gang experts. Based on his years of experience with

---

[14] Evidence Code section 773, subdivision (a) provides, "(a) A witness examined by one party may be cross-examined upon any matter within the scope of the direct examination by each other party to the action in such order as the court directs."

different gangs and gang members, he offered his own history, views, and opinions concerning the various Seaside gangs, his own gang the Mob, different gang areas, gang signs and colors, and gang memorials.

Concerning the cross-examination on his gang testimony, defendant claims counsel should have objected to questions that treated him as if he were a gang expert and sought his lay opinion concerning different subjects and hypothetical scenarios. Specifically, defendant complains of questions about whether the gangs he had been in— i.e., the Mob and Westside Village Park—were criminal street gangs; whether the Mob's primary activities involved committing the various crimes enumerated in the gang statute; whether the Mob stands for "murder on Broadway" and relates to the murder of a particular Mob member; what crimes Mob members have committed; whether gangs intimidate witnesses to their crimes; whether helping police is against gang philosophy; whether gang killings are important to the gang; whether gang members do senseless things, including killings, for the benefit of their gang; whether gang members lie to or misinform the police about gang crimes; and whether a gang member will have backup support for a shooting.

With one exception, we reject defendant's claim. The subject matter of the prosecutor's questions fell well within the scope of defendant's narrative testimony and properly sought to expose the extent of his knowledge and thereby undermine his credibility concerning gangs, their members, and their history, especially concerning the Mob. Many of the questions properly sought a lay opinion that was rationally based on defendant's own experiences and perceptions. (See Evid. Code, § 800.) And insofar as some questions sought an expert-type opinion, we do not find them objectionable because

defendant assumed that he was qualified to answer all of the questions; and in doing so without hesitation, he, in effect, qualified himself as his own gang expert.[15]

Defendant argues that the gang questions were prejudicial because they implied that he was familiar with gangs and gang related crimes, including specific killings. However, it was not so much the prosecutor's cross-examination that demonstrated defendant's familiarity with gangs, their activities, and crimes as defendant's own direct testimony.

We agree with defendant that asking defendant whether the Mob was a "criminal street gang" was objectionable because the prosecutor was implicitly using the phrase in its technical sense as defined in section 186.22 and as Detective Clark and Sergeant Kimball had used it. However, the prosecutor never established a proper foundation for the question—i.e., whether defendant knew and understood that statutory meaning of the phrase. Defendant claims counsel's failure to make a "foundation" objection was prejudicial. He argues that in agreeing that the Mob was a criminal street gang, he inadvertently admitted an essential element of the gang special circumstance allegation and enhancement allegations.

The jury was instructed that to find those allegations true, it had to find that defendant acted for the benefit of a criminal street gang; and to make that finding, the jury had to make various preliminary and prerequisite factual findings concerning the existence of a criminal street gang, its primary activities, and its pattern of criminal conduct. The jury was also instructed that in making these factual determinations, it could rely on expert testimony.

Detective Clark and Sergeant Kimball discussed the legal definition of a criminal street gang. They also provided factual bases for their conclusions concerning the Mob's

---

[15] At one point the prosecutor stated, "You're the expert. You designated yourself as an expert, sir."

primary criminal activities, its pattern of criminal conduct, and its qualifications as a criminal street gang as well as their conclusions that defendant committed his crimes for the benefit of the Mob.

In contrast, defendant offered little, if any, testimony to support the underlying factual findings necessary to show that the Mob's primary activities involved committing enumerated crimes or that the Mob has engaged in a pattern of criminal activity. Indeed, when asked whether the primary activities of a "criminal street gang" include the offenses listed in the statute, defendant answered, "That's not what it takes to be a gang," indicating that he did not understand the legal definition of a criminal street gang.

Given the strong, uncontradicted testimony of the prosecution's gang experts, we do not find a reasonable probability that defendant would have obtained a more favorable result concerning the gang allegations had counsel raised a foundation objection to the prosecutor's question, had the court sustained the objection, and had defendant not answered it.[16] (*Strickland v. Washington, supra,* 466 U.S. at pp. 688, 694.)

Defendant also complains that counsel should have objected to the prosecutor's use of his juvenile adjudications for impeachment. However, most of the prosecutor's questions properly focused on the nature of defendant's juvenile misconduct rather than the fact of a juvenile adjudication.[17] (See *People v. Lee* (1994) 28 Cal.App.4th 1724, 1740 [prosecution may introduce prior juvenile misconduct for purposes of

[16] The prosecutor also asked defendant if defendant's former gang in Barstow—the Westside Village Park Gang—was a criminal street gang, and defendant said it was. The failure to make a foundation objection to that question and answer was also harmless because there was no evidence, argument, or attempt to prove that defendant committed his offenses for the benefit of that gang. Indeed, the prosecution experts did not discuss that gang except to say that defendant had previously claimed membership.

[17] For example, defendant was asked whether he had robbed an 11-year old boy and then intimidating him by acting as if he had a gun and warning that he knew where the boy lived.

impeachment]; Cal. Const., art. I, § 28, subd. (f) ["Any prior felony conviction of any person in any criminal proceeding, whether adult *or juvenile*, shall subsequently be used without limitation for purposes of impeachment . . . "]; see also *In re Manzy W.* (1997) 14 Cal.4th 1199, 1209.)[18]

Defendant's reliance on *People v. Allen* (1986) 42 Cal.3d 1222 (*Allen*), *People v. Sanchez* (1985) 170 Cal.App.3d 216 (*Sanchez*), and *People v. Jackson* (1986) 177 Cal.App.3d 708, 711-713 (*Jackson*) is misplaced.

In *Allen*, the court stated that in introducing a prior felony conviction to impeach a witness, counsel may not inquire into the underlying details of the offense unless they are relevant for some other legitimate purpose. (*Allen, supra,* 42 Cal.3d at p. 1270.) Moreover, *Allen* predates the court's decision in *People v. Wheeler* (1992) 4 Cal.4th 284, where the court recognized that evidence of misconduct other than *felony* convictions was admissible for impeachment. (*Id.* at pp. 291-292.) Nothing in *Allen* suggests that the misconduct underlying juvenile adjudications is inadmissible for impeachment.

*Sanchez* held that a juvenile *adjudication* is not admissible as a felony conviction for impeachment because it is not a conviction. (*Sanchez, supra,* 170 Cal.App.3d at pp. 218-219. *Jackson* held that Welfare and Institutions Code section 1772 prevented a juvenile adjudication from being used to impeach a minor who had been honorably discharged by the Youth Offender Control Board. (*Jackson, supra,* 177 Cal.App.3d at pp.

---

[18] The prosecutor did ask whether defendant was committed to CYA after his arrest for possessing a weapon, ammunition, a ski mask, and rubber gloves and whether he was committed to CYA for robbery. Even assuming those questions impermissibly used the fact of a juvenile adjudication for impeachment, the failure to object to those two questions was harmless because, as discussed above, the misconduct underlying the commitment was admissible for impeachment.

·713-714.) Neither case considered whether evidence concerning the juvenile misconduct underlying an adjudication is admissible.[19]

Defendant claims counsel should have made hearsay objections to certain questions designed to impeach him based on information in a CYA Parole Consideration Report. Quoting the report, the prosecutor asked whether defendant had admitted during a group session that he not only possessed a gun but also intended to show a younger gang member how to kill somebody. Defendant denied saying that and claimed the report was inaccurate. Thereafter, the prosecutor noted that defendant had taken a victim awareness class and asked him whether he had been found to be "self-centered and narcistic [sic]" concerning his criminal victims. Defendant answered, "Self-centered I can agree with. Narcistic [sic] I can't agree with because I don't know what it means."

As to the first question, defendant has not demonstrated that a hearsay objection would have been sustained. The prosecutor did not attempt to introduce the CYA report into evidence, and it was not admitted. The prosecutor's question itself was not testimony or evidence, and jurors were instructed not to treat it as such. (See CALJIC No. 1.02.) Jurors are capable of distinguishing the testimony of witnesses from the statements or questions of counsel, and therefore we presume that jurors follow such instructions. (See *People v. Yeoman* (2003) 31 Cal.4th 93, 139; e.g., *People v. Smithey* (1999) 20 Cal.4th 936, 961; *People v. Boyette* (2002) 29 Cal.4th 381, 436.) Moreover, insofar as defendant was asked about a statement that he had allegedly made, evidence of

---

[19] Defendant notes that before trial, the prosecutor argued that her witnesses could not be impeached with their juvenile adjudications. Thus, defendant claims the prosecutor was guilty of misconduct by later doing to him what she had previously argued was not allowed. However, as noted, defendant forfeited any claim of prosecutorial misconduct. Moreover, in light of our discussion concerning impeachment with juvenile misconduct, there is no reasonable probability defendant would have obtained a more favorable result had defense counsel objected to the impeachment on grounds of prosecutorial misconduct. (*Strickland v. Washington, supra,* 466 U.S. at pp. 688, 694.)

his statement would have been admissible over a hearsay objection as a party admission. (Evid. Code, § 1220.)  However, defendant denied making the statement.

As to the second question, defendant testified on direct that he took a victim awareness class at CYA.  The prosecutor's question asked about CYA's evaluation of his performance.  Insofar as the conclusion that defendant was self-centered and narcissistic represented an extra-judicial statement by CYA officials offered for the truth, a hearsay objection would have prevented defendant from repeating it or agreeing that it had been said.  However, the failure to object was harmless.  The potential prejudice from defendant's admission that he was self-centered was inconsequential compared with the negative impression of his character from other conduct that he admitted.  For example, he said he threatened to kick Lisa's "A" because she returned a vehicle he had bought without returning his money.  He testified that Lisa had wanted him to stop selling crack, and when he told her he would have no place to stay if he did, she arranged for them to live with her father.  However, he never stopped selling drugs.  He also testified that he was furious about a rumor concerning Lisa and Jason, he asked his sister to "[s]ock that bitch in the mouth"; and he admitted that, despite Lisa's repeated protestations of love, he threatened to assault her, saying, "If I see you, I'm gonna slam my dick in your face."

Defendant complains that counsel should have made relevance objections to questions about the killing of Anton Tinsley near Broadway, which insinuated that the killing was the basis for the name Mob—i.e., murder on Broadway.  However, those questions were well within the scope of cross-examination about defendant's direct testimony concerning the origins of his gang, its name, the infighting among Seaside Crip gangs, and the killing of his friend Michael Butler.  Moreover, the questions were highly relevant concerning defendant's credibility on gang related subjects.

Defendant complains that counsel should have made a relevance objection when the prosecutor asked whether Latina Harris had to summon him to come downstairs when police came to her home to investigate the shooting at Boykin's car and whether she was

38

angry that defendant had brought the police to her door. Defendant answered "no" to both questions.

Defendant testified that after the shooting, he called a friend to see if the police were in the area, and then he went to Latina's home. However, police saw him as he walked through the gate of the building. He knocked on the window, and when Harris came to the door, he asked to use the upstairs bathroom. She allowed him inside, and when he came back downstairs, she was talking to the police. Both Officers Martin and Gonzalez also testified about locating defendant at Latina Harris's home and the circumstances surrounding their conversation with both Latina and defendant.

The prosecutor's first question was relevant insofar as it related to the circumstances under which the police spoke to defendant, and it tested the implication that he voluntarily came downstairs, as if he had nothing to hide. The second question— whether Harris was angry at him—was irrelevant, and an objection would have been sustained.

Defendant claims that the question was prejudicial because it "[s]hows that his friends are angry with him." However, defendant *denied* that Harris was angry with him, and there was no testimony that Latina was angry at him. Moreover, the prosecutor's question itself was not evidence. Under the circumstances, therefore, jurors had no evidentiary basis to infer that Latina or any of defendant's other friends were angry. In any event, it is not so uncommon for friends to get mad at each other, and that they do does not necessarily reflect a bad character trait. Accordingly, we find no reasonable probability that defendant would have obtained a more favorable result on any count had counsel successfully objected to the question. (*Strickland v. Washington, supra,* 466 U.S. at pp. 688, 694.)

Defendant complains that the prosecutor asked, "In the movie Rocky, I guess that's what he was doing, right? He went around to collect debts and broke people's arms or broke arms?" Defendant answered, "I don't really remember. I remember the

Case 4:07-cv-04592-SBA    Document 14    Filed 03/24/2008    Page 39 of 44

boxing ring fights." Defendant also complains that he was asked whether Michael
Fowler was an enforcer for the Mob. Defendant answered that he was "actually a drug
addict."

In asking those questions, the prosecutor was focusing on the shooting at Boykin's
car after Boykin was held responsible for his friend's alleged failure to pay for some
drugs. She asked generally what gangs do when they get "ripped off" and whether gangs
have "enforcers." Defendant said, "Some do, yes." The prosecutor then asked the
"Rocky" question.

Defendant also testified that if a drug user rips off a gang dealer, the problem is
usually between the two of them, and the dealer may retaliate; however, he agreed that
sometimes other gang member may retaliate. The prosecutor then asked about Michael
Fowler.

We agree that the "Rocky" question was irrelevant, lacked foundation, and seems
argumentative. However, given defendant's admission that some gangs have enforcers
and sometimes gang members retaliate, we fail to see how the "Rocky" question and
defendant's answer were prejudicial. Moreover, given defendant's testimony and
defendant's intimate knowledge of the Mob, we find the question about Fowler to be
relevant. Indeed, defendant mentioned Fowler during his direct testimony.

In addition to the substantive objections discussed above, defendant complains
that counsel should have challenged many questions because they were compound.
However, even if some or all of those objections had been sustained, the prosecutor could
have simply broken the questions down into their component parts and re-asked them.
Moreover, the record does not reveal that defendant was confused by the questions;
instead, he understood and answered them. Thus, unless the subject matter of compound
questions was objectionable on some other grounds, the failure to make "compound"
objections was harmless. (See *Kelley v. Bailey* (1961) 189 Cal.App.2d 728, 737 [error
concerning compound questions harmless where witness understood and answered them];

40

*Board of Trustees of Contra Costa Junior College District v. Schuyten* (1958) 161
Cal.App.2d 50, 58 [same]; *Clay v. Lagiss* (1956) 143 Cal.App.2d 441, 445 [same].)

Much the same can be said about objections that certain questions were
argumentative.[20]  We agree that many questions were objectionable as argumentative.
However, our focus now is on the potential prejudice from defense counsel's failure to
object.  Without minimizing the impropriety of the prosecutor's argumentative questions,
we observe that generally, in asking such questions, the prosecutor did not state or imply
the existence of facts not otherwise before the jury; some of the questions could have
been restated as proper and appropriate questions; some simply highlighted the
improbability of defendant's explanation; and most, if not all, of the argument contained
in the questions properly could have been, and was, made to the jury at the appropriate
time.  (See *People v. Guerra, supra,* 37 Cal.4th at p. 1127; *People v. Price* (1991) 1
Cal.4th 324, 484.)

We further note that defendant's answers were not damaging.  They were short,
direct, and consistent with his claim of innocence.  (See *People v. Johnson* (2003) 109
Cal.App.4th 1230, 1236.)  For example, on direct, defendant testified that after his release
from CYA he came to Seaside and was jailed because he likes to take pictures and stole a
disposable camera from Safeway.  On cross-examination, the prosecutor focused on the
pictures of defendant taken with a disposable camera on the day of the shooting and
asked, "Now you told us that you like to take pictures.  That's why you stole some
cameras from Safeway in 2001, because you like to take pictures so much.  [Are there]
[a]ny pictures—no pictures on this roll of anyone but you on 11/11/02; is that right?"

---

[20] "An argumentative question is a speech to the jury masquerading as a question"
and is improper because "it does not seek to elicit relevant, competent testimony, or often
any testimony at all." (*People v. Chatman* (2006) 38 Cal.4th 344, 384.)  Instead, it is
designed to either engage the witness in argument or argue directly to the jury.  (*Ibid.*;
*People v. Guerra* (2006) 37 Cal.4th 1067, 1125.)

Defendant agreed that he was the only one pictured. To the extent the question was argumentative, it and defendant's answer were harmless because the fact is, neither Lisa nor defendant had taken pictures of anyone else that day despite the fact that they were allegedly having an impromptu baby shower with other guests.

Finally, insofar as the prosecutor may have implied the existence of certain facts that were not yet, or ever, before the jury, defendant suffered no appreciable harm because, as noted, the court instructed jurors to not infer the existence of any facts from counsels' questions.

Our analysis concerning compound and argumentative questions also applies to the questions that defendant claims called for speculation. Defendant answered many of them with a general or noncommittal answer or simply said he did not know; and, again jurors were instructed not to infer anything from questions themselves.

Defendant specifically complains about questions that asked whether certain witnesses had lied.

In *People v. Chatman, supra,* 38 Cal.4th 344, the Supreme Court explained that were-they-lying type questions are improper when they are argumentative, call for speculation, or are designed to elicit irrelevant testimony. However, such questions are proper and permissible when the defendant is a percipient witness to the events at issue or is well acquainted with the witness and thus has personal knowledge that can assist the trier of fact in determining whether particular witnesses, whose testimony differs from the defendant's, are intentionally lying or are merely mistaken. (*Id.* at p. 383-384.)

Here, the questions defendant cites did not impermissibly call for irrelevant speculation. They involved testimony and police reports concerning events to which defendant was a percipient witness: the sale of drugs to Jones and defendant's flight from police on November 14, 2002. They also concerned Lisa's testimony about his handwriting on a jailhouse note. Given his personal knowledge concerning all of these

42

matters, defendant could have assisted the jury in determining why the testimony of those witnesses differed from his own and whether the witnesses were lying.

In light of our whole discussion, we conclude that defendant has failed to demonstrate a reasonable probability that the jury would have returned a more favorable verdict on any charge or allegation had defense counsel objected to the prosecutor's questions whenever it was theoretically possible to do so, or had counsel raised a more general claim of prosecutorial misconduct. Simply put, as to those objections, both individually and collectively, counsel's omissions do not undermine our confidence in the jury's verdict. (*Strickland v. Washington, supra,* 466 U.S. at pp. 688, 694.)

## GANG ENHANCEMENT FINDINGS

Defendant contends that there is insufficient evidence to support the jury's special circumstance and gang enhancement findings.

When considering a challenge to the sufficiency of the evidence to support a criminal conviction or enhancement, we determine whether there is substantial evidence—i.e., evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could make the necessary findings beyond a reasonable doubt. In making that determination, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. Rather, we review the whole record in the light most favorable to the judgment, we draw all reasonable inferences from the evidence that support it, and we presume the existence of every fact the trier of fact could reasonably deduce from the evidence. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319-320; *People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

The special circumstance allegation and gang enhancements required a finding that defendant participated in a "criminal street gang" (§ 186.22, subd. (a); see § 190.2, subd. (a)(22)), which is defined as, "an ongoing association of three or more persons with a common name or common identifying sign or symbol [that] has as one of its primary

## PROOF OF SERVICE BY MAIL

### BY PERSON IN STATE CUSTODY

(Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, _Joseph Horne_ , declare:

I am over 18 years of age and a party to this action. I am a resident of _Kern_

_Valley State_ Prison,

in the county of _Kern_ ,

State of California. My prison address is: _P.O. Box-5102_

On _March 19th 2008_ ,
(DATE)

I served the attached: _Amended Federal Writ_

_of Habeas Corpus_
(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope,

with postage thereon fully paid, in the United States Mail in a deposit box so provided at the

above-named correctional institution in which I am presently confined. The envelope was

addressed as follows:

_Office of the Clerk U.S. District court Northern_
_District of California_
_1301 Clay Ste. Suite 400S_
_Oakland CA 94612-5212_

I declare under penalty of perjury under the laws of the United States of America that the

forgoing is true and correct.

Executed on _March 19th 2008_          _John Al_
(DATE)                                          (DECLARANT'S SIGNATURE)



Mr. Jogad Hanson
#V-84308
P.V.S.P. B-8/118
P.O. Box-515
Coalinga, CA 93210