Joseph Horne
# V-84328 KVSP
P.O. BOX 5102
Delano, CA 93216

**FILED**

AUG 2 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IN THE UNITED STATES DISTRICT COURT

FOR NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HORNE<br><br>        Petitioner,<br><br>v.<br><br>ROBERT HOREL, Warden.<br><br>        Respondent. | No. <u>C 07-4592-SBA (PR)</u><br><br>**PETITIONER'S TRAVERSE** |

    Petitioner, Joseph Horne, denies and or disagree - disagrees with the following:

(1)    Any and all claims set forth in Respondents answer that petitioner received a fair trial.

(2)    Any and all claims set forth in Respondent's answer that the evidence in the present case was sufficient.

(3)    Any and all claims that trial counsel's non-participation was justified... during direct examination and cross examination.

(4)    Any and all claims that the Petitioner had notice and or plead the premeditated charge regarding attempted murder.

///

(1)

(5)    Any and all claims that the Petitioner was not prejudice by any major or small error committed during petitioner's trial.

(6)    Any and all claims that the Petitioner was identified by Ms.Carlete Wanton.

(7)    Any and all claims that the states decision in the present case was not unreasonable or contrary to Federal law...

(8)    Any and all claims that the Petitioner's writ of Habeas Corpus sould be denied.

Petitioner hereby plead with Honorable District Court to bless Petitioner by reversing the conviction to the present case therefore, either granting new trial and or rleasing petitioner from prison.

Petitioner, hereby declare under penalty of perjury that the foregoing is true.


Executed at K.V.S.P.    on 8-11-08

Signed: _____
PETITIONER IN PRO PER.

# EXHIBIT 1

JOSEPTH D. HORNE
V-84328 KVSP
P.O. BOX 5102
Delano, CA 93216

IN THE UNITED STATES DISTRICT OF CALIFORNIA

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSEPH HORNE. | ) | No.# <u>C 07-4592-SBA (PR)</u> |
| | ) | |
| Petitioner, | ) | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| | ) | **IN SUPPORT OF ANSWER** |
| vs. | ) | |
| | ) | |
| ROBERT HOREL, Warden | ) | |
| | ) | |
| Respondent. | ) | |

# TABLE OF CONTENTS

<u>SUBJECT:</u>                                                          <u>Page:</u>

<u>PETITIONER'S ARGUMENT TO CLAIM ONE:</u>                      1-10


THE CALIFORNIA STATES COURT

IMPROPERLY REJECTED PETITIONER'S

CLAIM OF I.A.C. DURING CROSS-EXAMINATION


SET FORTH IN PAGES "1-10"



<u>PETITIONER'S ARGUMENT TWO:</u>                              <u>Page:</u>

                                                           11-22


PETITIONER WAS DEPRIVED

OF EFFECTIVE ASSISTANCE OF COUNSEL

WHEN HE TESTIFIED IN THE NARRATIVE FORM


SET FORTH IN PAGES "11-22"



<u>PETITIONER'S ARGUMENT TO CLAIM THREE</u>                    <u>Page</u>

                                                           23-26


APPELLANT'S SENTENCE FOR THE PREMEDITATION ASPECT OF

ATTEMPTED MURDER SHOULD BE SET ASIDE BECAUSE THE

PREMEDIATATION ENHANCEMENT WAS NOT PLEADED...

SET FORTH IN PAGES: 23-26.

# TABLE OF AUTHORITIES

| CASES: | Page: |
|---|---|
| Nix v. Whiteside | 1,2,8,12 |
| 475 U.S. 157 (1986) | |
| STICKLAND V. WASHINGTON | 3,5,10,20,25 |
| 466 U.S.688 (1984) | 22 |
| PEOPLE V. BRIGHT | 24 |
| 12 Cal.4th 652 (1996) | |
| UNITED STATES v. CRONIC | 3,4,5,8,9,12 |
| 466 U.S. 648 (1984) | 16, 20, 22 |
| U.S. v. CURTIS (C.A.7 (Ill) | |
| (1984) | 18, 19 |
| STIRONE v. UNITED STATES | 24 |
| (1960) 361 U.S. 212, 218; 4 L.Ed.2d 252 | |
| U.S. v. SWANSON | |
| (C.A. (Ariz) 1991) 943 F.2d 1070 | 16 |
| PEOPLE V. GUZMAN | |
| (1988) 45 Cal.3d 915 | 2 |
| PEOPLE v. KOONTZ 27 Cal.4th at 1069 | 12 |
| FARETTA v. california (1975) 422 | |
| U.S. 806 835, 45 L.ED. 2d 562 | 12 |
| JONES v. SMITH 231 F.3d 1227 | 24, 25 |
| 1232-1233 (9th Cir. 2000) | |
| APPRENDI v. NEW JERSE | 24 |
| (2000) 530 U.S. 436 | |
| BELL v. CONE (U.S. 2002) 122 S.CT 1843, 535 | 16 |
| 685 | |

                                                              **Page:**

**U.S. CONSTITUTION:**

**6th Amendment...**                                          **4,5,16,24**

14th Amendment...                                            **24**




**OTHER AUTHORITIES:**


**PENAL CODE Sec. 664(a)**                                    **23, 24**


**Calif. Const. Art.I Sec. 15-16**                            **24**

**SUPPORTING DOCUMENTS:**

EXHIBIT ONE

TRIAL TRANSCRIPTS OF AN

ALIBI WITNESS PRSENTED

BY PETITIONERS TRIAL COUNSEL.

EXHIBIT TWO (BELL v. CONE/ exhibit three

(SWANSON)/EXHIBIT FOUR CRONIC/EXHIBIT 5

(U.S. v. CURTIS)

## ARGUMENT ONE

### THE CALIFORNIA STATES COURT

### IMPROPERLY REJECTED PETITIONERS

### CLAIM OF I.A.C. DURING CROSS-EXAMINATION

**Set Forth:**

Petitioner rejects the Respondent's entire argument regarding claim one in its Answer to Petitioner's Federal writ of Habeas Corpus.

Respondent does not deny and should be deemed "Implicitly" to concede that trial counsel did not participate during a critical stage of petitioner's trial, namely." Cross=examinnation of the defendant."

On page 18 lines 15-17 in the answer of Respondent it cites Nix v. Whiteside, 475 U.S. 157 (1986), in its attempt to argue that counsel had reason to sit out cross-examination further, Respondent argues that trial counsel's non-participation was justified for the same reasons that trial counsel's non-participation in Petitioner's direct examination assumingly was.

Respondent is surely incorrect and certainly mistakes Whiteside .In Whiteside, counsel effectively urge the defendant to testify truthfully... and participated in every stage of the trial. See, Nix v. Whiteside, 475 U.S. 157 (1986).

It is fact that Whiteside declares that if counsel can not convince the defendant to testify truthfully than he can step down as counsel, if permitted by the court or the defendant

(2)

will be permitted to use "narrative form" counsel will be present and participate during all other stages of trial. See, People v. Guzman (1988) 45 Cal.3d 915.

The facts set forth in the Petitioner's claim one, in his F.W.H.C., is very hard to dispute... both the state court of appeal and Respondent conceded that Petitioner's trial counsel did not participate during cross examination. See Respondent's answer page 18 lines 15-17. See California State Court of Appeals s opinion... page 27 paragraph 2...

It is an undisputable fact that during this critical stage of trial petitioner was denied counsel fully.

Respectfully argued by the Petitioner, such I.A.C. does not fall under the jurisdiction of Strickland v. Washington 466 U.S. 688 (1984).

Petitioner agrees w/Respondent's interpretation of Strickland... but (certainly) disagree that such case controls the case before the District Court today such contention is absurd, such case does not have jurisdiction over the present case for the following reason:

(1)    Strickland governs cases where trial counsel makes errors at specific points in trial, makes hurtful ommissions, where counsel's performance comes into question.

(2)    Cronic control cases where trial counsel is complete absent. further, Respondent cites no case law in which a court has held that trial counsel can not participate during cross-examination of the defendant for any reason... surely, no such holding exist.

///

///

The Supreme Court was weary about allowing defendant to perform "direct examination" absent counsel... such court certainly would not accept a defendant to be forced to face cross-examination absent the protection of counsel which is guaranteed by the U.S. Constitution's 6th Amendment, unless waived by defendant no such waiver accured.

Studying and comprehending the U.S. Supreme Court's ruling in Cronic, the petitioner is forced to disagree with Respondent's assertion that it only applies to defendants who were denied counsel during the entire trial proceeding...such comprehension of Cronic is incorrect. Cronic focus was on the denial of counsel during and or at a critical stage of a trial, especially in cases where a defendant faces a life sentence.

In the present case before the Honorable District Court. Petitioner was denied counsel in a complete fashion during cross-examination of the defendant by the prosecutor.

Petitioner argues seemingly correctly that the present case falls under the jurisdiction of cronic trial counsel did not participate. Trial counsel had no performance. At this stage of trial denial of counsel was absolute. Thus, can not be controled by Strickland in which, case trial counsel's "performance" is evlauated by the Court...

Such performance can not be evaluated concerning this stage of the trial because no performance exist.

Denial of counsel is a well established violation of the U.S. Constitution... specifially, the 6th Amendment. (Federal law)

(4)

counsel at a critical stage of trial Holding that such type of denial would render the trial unfair and prejudice would be presumed... thus, no showing of prejudice would be necessary.

Petitioner would like to point out to the Honorable court that by viewviewing the court except set forth in Respondent's answer on pages 14-16, the Honorable court will see that Petitioner was not told that trial counsel would also sit out during cross-examination. Such facts were kept from the petitioner. .. neither the court nor trial counsel told petitioner he'd have to undergo cross-examination without counsel's protection, nor did the Honorable Judge and or trial counsel's protection, nor did the Honorable judge and or trial counsel admonish the petitioner of the dangers of doing such thing absent the protection of counsel, such omission by counsel is I.A.C.

In the original version of the court excerpts (the uncensored version) that the Respondent set forth in its answer the trial judge could be heard setting the rules as to what counsel "will" do regarding the narrative testimony, without knowing counsel's reasons for the ethical obligation, the trial court told the petitioner that his trial counsel "will not" refer to "any" part of his testimony during counsel's closing argument.

Due to that fact that the ethical obligation exist only requires that counsel not argue the parts he knows to be prejury ..., the Honorable Judge over step his boundary and counsel rendered I.A.C. for obeying such order.

///

(5)

Trial counsel failed to subject the prosecutor's case to a meaningful adversarial testing by not participating during the state of cross-examination of the defendant in such a serious case as the present one.

Respondent asserts that the United States Supreme Court clarified Cronic by ruling that on attorney's failure must be complete through out trial and not merely just a failure to test the prosecutor's case... such contention is absurd. Surely. Cronic holds "Denial of counsel at a critical stage of trial is assumingly prejudicial."

Trial counsel can not dismiss his duty of representing his client merely because he does not want his client to tell his story.

Defendant has the absolute right to give his testimony. See Whiteside 475 U.S. 157 (1986).

The state courts ruling in the present case was contrary to and involved an unreasonable application of clearly established Federal law.

In the interest of justice... writ of Habeas Corpus should be granted...

Prejudice:

Petitioner argues that the present case is controlled under the jurisdiction of the U.S. Supreme Court ruling in U.S. U.S. vs. Cronic 466 U.S. 648 (1984)... Thus, prejudice should be presumed.

Further, petitioner suffered sufficient amount of prejudice while being cross examined by a prosecutor absent counsel in such a serious case.

(6)

Trial counsel's non-participation allow the jury to see a seperation in the defense.

The jury notice such awkward procedure and even inquire about it.

The prosecutor was able to ask numerous of damaging questions... inadmissible questions, questions that were argumentive, compound, hearsay, etc... free of objections... the prosecutor took advantage of such an opportunity... See. "Appellant's opening brief " pages 30-43.

The petitioner was not notified by the court or his trial counsel that he would not be protected during cross examination. No one told him that his counsel would not participate during such an important stage of the trial. The record will show such.

Further, if petitioner had been notified that counsel was not going to participate petitioner could have atleast protected himself from the abusive cross-examination by raising objections.

During cross-examination petitioner had no idea that counsel was not involved. Thus, when trial counsel did not object to a certain question I thought was wrong petitioner did not refuse to answer the question. Thus, answered every question.

Petitioner was only told that counsel was not participating when he got off of the stand... even if this case is ruled under jurisdiction of <u>Strickland</u>, reversal is warranted. Petitioner suffer prejudice.

(7)

## ARGUMENT TWO

**PETITIONER WAS DEPRIVED OF EFFECTIVE ASSISTANCE
OF COUNSEL WHEN HE TESTIFIED IN THE NARRATIVE FORM**

**Set Forth:**

In claim two petitioner argues that trial counsel incorrectly failed to participate during direct-examination.

Trial counsel, in the present case, notified the court of petitioner's desire to testify on his own behalf... trial counsel further notified the court that it would be strongly against counsel's advice and that counsel would not participate due to ethical reasons. (Note. "Trial counsel never disclosed what the reasons were.).

Petitioner testified using the narrative form.

In Petitioner's comprehension <u>U.S. v. Cronic</u> differs from respondent's... further, the U.S. Constitution specifically, the 6th Amendment of our constitution, holds that all defendants has a right to counsel during every stage of the criminal proceeding... unless the defendant has waived such right explicitly. See, <u>Faretta v. California</u> (1975) 422 U.S. 806, 835. "The right to D-counsel persist unless the defendant waives the right." See, <u>People vs. Koontz</u> 27 Cal.4th at 1069.

Respondent argues that trial counsel's non-participation in the petitioner's direct examination was justified under <u>Nix v. Whiteside</u> (1986) 475 U.S 157. Respondent is incorrect... <u>Whiteside</u>, held that "a defendant under a narrative form, only after admitting guilt to counsel and expressing to counsel that he will testify contrary to the truth when he takes the stand

(8)

Whiteside, also states that trial counsel is not the trier of fact, but counsel for the accuse... and should not judge the defendant.

In the respondent's Answer to petitioner's claim two it argues that trial counsel effectively justified his actions by reasons he set forth in his declaration filed to the California Supreme Court. The petitioner argues that the respondent could not have been more incorrect.

In trial counsel's declaration he did not believe the petitioner's alibi to count one, counsel gave hihis reason for such disbelief... specifically, counsel declared that the only reason he did not believe the petitioner's alibi to count one was simply because the witnesses that the petitioner told counsel to speak to regarding his presence at the baby shower was unwilling to speak to him to confirm or deny the alibi surely the Honorable court won't accept such an absurd excuse.

Further, trial counsel asserted a concern that petitioner told him his account regarding the shooting at an occupied vehicle, (the charge regarding Mr. Marcus Boykin.), but he, did not believe that the petitioner had told him the full story. Yet even after given the chance, could not, nor did he, attempt to state why he felt something was missing, nor does that equal a lie.

It is obvious by trial counsel's declaration that the petitioner did not at any time, express any guilt directly or indirectly to trial counsel see, declaration of the petitioner.

///

//

(9)

Trial counsel himself, declared in his declaration that the petitioner, in fact, expressed his innocence to all charges at all times never asserting that he was guilty of any wrong doing. See, trial counsel's declaration.

Further, counsels declaration did not justify his actions. It did not show that he had an ethical obligation.

Trial counsel was not at any risk of suborning perjury. He possessed no evidence that the petitioner was untruthful about any part of his testimony.

Petitioner testified truthfully... petitioner testified regarding his presence at the baby shower... (alibi for count one). No perjury charges were brought against the petitioner... nor, was perjury alleged.

Trial counsel's contention that he did not present petitioner's direct examination because he did not believe the petitioner is absurd. It shall be noted that trial counsel presented witnesses solely as alibi witnesses to count one. Further , counsel cross-examined several prosecution witnesses regarding my alibi in his attempt to show the jury I was in fact present. court records will certainly show that counsel questioned and presented people he knew would vouch for the petitioner. such actions led petitioner to believe counsel had other hidden motives to stop him from testifying.

The record of the trial in the present case will show that trial counsel presented "Showntay Hauntly" as an alibi witness. If counsel presented her testimony he surely could have presented the most important testimony of the trial.

(10)

Under Cronic. Supra. " Denial of counsel at a critical stage of trial prejudice is presumed."  See U.S. v Swanson (C.A.9(Ariz.) 1991) 943 F.2d 1070. See. Bell v. Cone (U.S. 2000) 122 S.Ct. 1843.

The U.S. Constitution, specifically, the 6th Amendment... guarantees all defendants the right to counsel unless such right is waived by the defendant explicitly... see, Farretta no such waiver occurred here. Thus, counsel should not have been denied.

Trial counsel can not be allowed to claim "ethical reasons" in a mere attempt to stop the defendant from testifying. It's a harsh and unfair tactic. It's a manipulation of the lawyers trust that the Honorable Judge has for the lawyer... an abuse of trust,petitioner would argue.

Trial counsel subjected petitioner to an unfair trial in which petitioner has suffered tramendously. Trial counsel's reasons for alleging an ethical obligation is absurd, counsel abused his ethical obligation, witnesses had reason not to speak to petitioner's defense team, such reason will be set forth if petitioner is granted an evidentiary hearing.

Respondent cites no court case-law that holds that trial counsel can abandon the defendant merely because witnesses would not speak to him., or because he had a hunch it was more to petitioner's account regarding what happen. Neither is a plan to commit perjury... nor, an admission of guilt.

Further, trial counsel did as petitioner, as the Honorable Judge told him and did not refer to any of the defendant's

(11)

testimony. See. respondent's answer. page 14-16...

Even if defendant is required to testify in a narrative form, trial counsel is only permitted not to refer to the testimony he know to be false. He is not permitted to exclude the defendant's entire testimony... See. U.S. v. Curtis (1994)... "A lawyer may not later argue the defendant's known false version of facts to the jury as worth of belief and may not recite or rely upon the false testimony in his or her closing argument." Curtis. Further states "if the defendant has admitted to defense counsel facts which establish guilt and counsel's independent investigation established that the admissions are true, but the defendant insists on the right to testify...narrative form is warrfanted." (warranted)

With the interest of justice being a priority how can one argue that counsel's actions are not prejudicial, only one with only the interest of winning a case and no regards for justice could do so.

The Honorable District Court should grant petitioner a new and fair trial.

**Prejudice:**

Petitioner's contention that the present case is an ideal case to be controlled by Cronic, supra is correct.

Petitioner's trial counsel had no performance. The denial of trial counsel was absolute, such denial occurred at a critical stage of trial no performance exist to be evaluated under Strickland v. Washington 466 U.S. 648 (1984).

///

(12)

Alternatively, petitioners argue that even if _Strickland_ was the controlling case, trial counsel's I.A.C. (note: California State of Appeal ruled in it's opinion that counsel rendered I.A.C.) was certainly prejudicial... the petitioner suffered a substantial amount of prejudice.

The jury was aware of counsel's non-participation and after a while of watching such awkward procedure they questioned it.

Petitioner being uneducated about the law, he spoke quite freely opening up a slew of doors that allowed a sufficient amount of damaging evidence to be entertained in the presence of the jury. Such evidence would not have been admissible if petitioner had not opened the doors by speaking freely... trial counsel would have guided petitioner by the traditional question and answer method...

Petitioner need not show the Honorable Court what he would have said, but more like what the petitioner would not have said.

There could be not a chance that there doubt that if counsel presented the petitioner's testimony it would have been more focused on the issues, and would have prevented petitioner from giving his life story, which opened up a slew of doors to evidence that was otherwise irrelevant and, or inadmissible.

Petitioner's life story gave the prosecutor the idea to turn him into a "gang expert" and make him testify against himself.

///

(13)

Under <u>Cronic</u> and or <u>Stickland</u> petitioner suffered a prejudice that requires reversal. Trial was unfair and conviction should not stand.

Further, petitioner refers the Honorable District Court to the exhibit number one. Please view. Petitioner is certain that he is correct when stating that if counsel presented her for the alibi, he could have presented the petitioner.

Instead, counsel misled the Honorable Court and manipulated the trust the court had for counsel by claiming an ethical obligation when counsel did not have one.

Trial counsel's actions should be deemed prejudicial...

### ARGUMENT TWO

**APPELLANT'S SENTENCE FOR THE PREMEDITATED ASPECT OF ATTEMPTED MURDER SHOULD BE SET ASIDE, BECAUSE THE PREMEDITATION ENHANCEMENT WAS NOT PLEADED...**

SET FORTH:

The jury convicted on premeditated attempted murder of Jaymes Lambert with a special finding of premeditation. (CT 966) Although the consolidation indictment/information charged attempted murder in count II it did not charge the enhancement of premeditation. (CT 966) (CT 827-828).

Penal Code section 664(a) includes an enhancement, or more speifically a "penalty provision specifying a greater term. <u>People v. Bright</u>(1996) 12 Cal.4th 652, 656 N.2. (hereinafter enhancement) for premediated attempted murder. The punishment thereunder for attempted premeditated murder is an indeterminate life term. Penal Code section § 664(a).

Section § 664(a) requires premeditation enhancement to be both pleaded and provided, but proven to provide adequate

notice of the charges. See <u>Bright</u>. Nothing in the pleading or grand jury transcripts provided notice of premedITATION. The grand jury transcripts merely showed that the planned crime, if any, was the homicide of ewing.

This violated petitioners right to adequate notice of the charges Cal. Const. Art.1, sect. 15, 16 U.S. Const. 6th and 14th Amendment, <u>Strirone v. United States</u> (1960) 361 U.S. 212, 218.

In <u>Jones v. Smith</u> 231 F.3d 1227, 1232-1233, 1235 (9th Cir. 2000) the Ninth Circuit declared that under <u>Apprendi v. New JersJersey</u> (2000) 530 U.S. 436 and under Penal Code sect. 664(a), if the charging document does not charge premeditation, then the sentence may not be enhanced thereby. That conclusion should control.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Defense counsel did not object. That's I.A.C. <u>Strickland v. Washington</u> 466 U.S. 688 (1984); <u>Jones v. Smith</u> 231 F.3d 1227, 1235 (9th Cir. 2000). "This issue may be raided on appeal, because there was no valid trial strategy not to object.

The state courts speculated that trial counsel had a valid strategic reason not to object, namely that he somehow had already obtained acutal notice of the premeditation allegation (Slip op. p.60). This speculation is unfounded. There is no evidence of any such notice and even if arguendo, trial counsel did  receive informal notice, or guess that was not a valid reason to waive statutory pleading requirement, especially because of the severe consequences of the premeditation finding. Namely an indeteminate life term.

(15)

### Prayer For Relief

**WHEREFORE**, petitioner appellate prayes that review be granted and that petitioners habeas corpus be granted and that petitioners be granted an evidentiary hearing de novo in this Honorable district court. Petitioner further prays for relief. Petitioner hereby declares under penalty of perjury that the foregoing is true.

Executed at KVSP   on August 18, 2008

Signed

PRO PER Joseph Horne
K.V.S.P.
P.O. BOX 5102
Delano, CA 93216

/////////

(16)

# EXHIBIT 2

# EXHIBIT COVER PAGE



ONE
EXHIBIT

Description of this Exhibit:

Trial transcripts of "Shawntau Hauntta" which was presented by Petitioners trial counsel...for the alibi to count one.

Number of pages to this Exhibit ___ 7 ___ pages.

## JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [✓] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury

# W I T N E S S   I N D E X

WITNESS                                                    PAGE

SPENCER, TRACEY
Direct Examination by Ms. Hill . . . . .3130

MARTIN, DANNY
Direct Examination by Mr. Hatcher. . . .3135
Cross-Examination by Ms. Hill. . . . . .3144
Redirect Examination by Mr. Hatcher. . .3150

WELCH, ALICIA
Direct Examination by Mr. Hatcher. . . .3172
Cross-Examination by Ms. Hill. . . . . .3180

HUNTLEY, SHANTAY
Direct Examination by Mr. Hatcher. . . .3190
Cross-Examination by Ms. Hill. . . . . .3195

ST. CLAIR, GARY
Direct Examination by Mr. Hatcher. . . .3208

--oOo--

Note: Trial counsel never
witnesses. Thus, could have
presented the accused.

```
 1          THE WITNESS:  S-h-a-n-t-a-y.

 2          THE CLERK:  Thank you.  Last name

 3  H-u-n-t-l-e-y?

 4          THE WITNESS:  Yes.

 5          THE BAILIFF:  Make yourself comfortable

 6  and speak right into the microphone.

 7          THE WITNESS:  Okay.

 8               SHANTAY HUNTLEY

 9       a witness called on behalf of the

10       Defendant herein, after having

11       been first duly and regularly sworn,

12       testifies as hereinafter follows:

13       DIRECT EXAMINATION BY MR. HATCHER

14  BY MR. HATCHER:

15  Q       Miss Huntley, do you know Lisa Welch,

16  the lady who just testified?

17  A       Yes, I do.

18  Q       Are you guys friends?

19  A       Yes.

20  Q       How about the man on the far end of the

21  table?

22  A       Yes?

23  Q       In the black shirt, you know him?

24  A       Yes.

25  Q       Who is that?

26  A       Joseph Horne.

27  Q       How long have you known Mr. Horne?

28  A       Mostly all my life.
```

```
1    Q       Are you guys related in any way?

2    A       No.

3    Q       Do you recall a baby shower or two

4    being held for Lisa just before her baby was

5    born?

6    A       Um-mm, yes, I do.

7    Q       Let's talk about the first one.  Where

8    did the first one take place?

9    A       Um, at her dad's house.

10   Q       And that's -- you have a street?

11   A       De La Vina in Monterey.

12   Q       Okay.  Was that the first one or the

13   second one?

14   A       Um, I believe it was the first one.

15   Q       The one on De La Vina?

16   A       I'm not sure.  The second one.  I'm not

17   sure.

18   Q       The second one was on De La Vina?

19   A       Yeah.

20   Q       Did you attend the one in Seaside?

21   A       Um.

22   Q       Did you go to that one?

23   A       Um, I don't recall.  I think I did.

24   I'm not sure.  I think I did.

25   Q       Were there a lot of Mr. Horne's family

26   at the one in Seaside, the first one?

27   A       Yes.

28   Q       Now the second one was held on De La
```

1  Vina at Lisa's house where she and her father

2  lived?

3  A      Yes.

4  Q      Did you attend that one?

5  A      Yes.

6  Q      What time did you arrive at that one,

7  if you remember?

8  A      Um, I'd say about two, three.  Could'a

9  been later, but two and three.  In between

10 those two times.

11 Q      And did you go shopping with Lisa?

12 A      Um, I seen her at Marshals.  I was

13 getting something for her baby.  I was getting

14 the baby outfit.

15 Q      Okay.

16 A      Um-mm.  And, um, she was, uh, letting

17 me know to come by the house.

18 Q      Did you have your own transportation?

19 A      Um, my ex-boyfriend that I was with at

20 the time.

21 Q      So you saw her at Marshals, and that's

22 when you decided to go over to her place?

23 A      Yes.  She invited -- yes.

24 Q      When you got there, were there other

25 people already there?

26 A      Yes, a few others.

27 Q      You know who they were?

28 A      Um, I can't say any names.  Like people

SUSAN JUST, OFFICIAL COURT REPORTER, NO. 6838

1    I really get along with, but it was people

2    there that I know.

3    Q       Okay.  Were they all females?

4    A       No, not really.

5    Q       Who -- were there any males involved?

6    A       A couple of 'em.

7    Q       Who were the couple?

8    A       Uh, can't really say.

9    Q       Well, let's go to specifics.  Was Mr.

10   Horne there?

11   A       Oh, yes, he was there.

12   Q       Where did you see Mr. Horne, where was

13   he?

14   A       Um, he was in the room putting the

15   bassinet together.

16   Q       So you saw him -- which room was that,

17   the living room or bedroom?

18   A       He was in the bedroom.

19   Q       In the bedroom?

20   A       Um-mm.

21   Q       And you say he was putting a bassinet

22   together?

23   A       Yes, for the baby.

24   Q       What about a stroller, did you also see

25   him put a stroller together?

26   A       Yes.  He put the stroller together,

27   too.

28           MS. HILL:  Objection.  Leading.

```
 1            THE COURT:  Overruled.
 2   BY MR. HATCHER:
 3   Q       What time did you leave this?
 4   A       Say about like 7:30, eight.
 5   Q       From the time you got there -- strike
 6   that.
 7           Well, you say you got there 2:30,
 8   three, you think, but it could have been
 9   later?
10   A       Yes.
11   Q       Could it have been as late as 5:00?
12   A       No.
13   Q       When you saw Lisa at Marshals, did you
14   go to any other stores with her?
15   A       Uh, we went to Target.
16   Q       Anyplace else?
17   A       No.
18   Q       When you left Target, did you go
19   straight to Lisa's house or did you wait -- do
20   something else?
21   A       We went straight.  We went back to her
22   dad's house.
23   Q       And your ex-boyfriend provided the
24   transportation for you?
25   A       Yes.
26   Q       Did he drop you off there?
27   A       Yes.
28   Q       How did you get home after the party?
```

```
 1   A        Um, Lisa dropped me off.

 2   Q        So Lisa took you home after the party?

 3   A        Yes.

 4   Q        We keep saying "party" and "shower" and

 5   so forth.  Was it a formal party?

 6   A        It was a baby shower.

 7   Q        I assume you gave her a present for the

 8   baby?

 9   A        Yes.

10   Q        How long have you known her?

11   A        Um, I went to school with Lisa.

12   Q        You guys pretty good friends?

13   A        Yes.

14   Q        Lisa took you home about what time?

15   A        Um, I'd say about 8:30, 9:00.

16   Q        By the time Lisa took you home, was

17   everybody else gone?

18   A        There was still like a few people.  Not

19   a lot, but a few.

20   Q        What's a few?  One, two?

21   A        Like, say, about five or six.

22            MR. HATCHER:  Nothing further.

23            THE COURT:  Cross.

24            CROSS-EXAMINATION BY MS. HILL

25   BY MS. HILL:

26   Q        Miss Huntley, you say that you've known

27   -- you call him Joseph Horne or J.D.?

28   A        I call him J.D.
```

# EXHIBIT COVER PAGE TWO

EXHIBIT

Description of this Exhibit:

Case law for Bell v. Cone
Excerpts from the U.S. Supreme
court opinion.

Number of pages to this Exhibit:  2  pages.

JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [x] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury

122 S.Ct. 1843, 535 U.S. 685, Bell v. Cone, (U.S. 2002)

established federal law erroneously or incorrectly").

Petitioner contends that the Court of Appeals exceeded its statutory authority to grant relief under § 2254(d)(1) because the decision of the Tennessee courts was neither contrary to nor an unreasonable application of the clearly established law of *Strickland*.    Respondent counters that he is entitled to relief under § 2254(d)(1)'s "contrary to" clause because the state court applied the wrong legal rule.    In his view, *Cronic*, not *Strickland*, governs the analysis of his claim that [535 U.S. 695] his counsel rendered ineffective assistance at the sentencing hearing.    We address this issue first.

In *Strickland*, which was decided the same day as *Cronic*, we announced a two-part test for evaluating claims that a defendant's counsel performed so incompetently in his or her representation of a defendant that the defendant's sentence or conviction should be reversed.    We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things:    first, that counsel's "representation fell below an objective standard of reasonableness," 466 U.S., at 688, 104 S.Ct. 2052;    and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 104 S.Ct. 2052.    Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," *id.*, at 687, 104 S.Ct. 2052, and the sentence or conviction should stand.

In *Cronic*, we considered whether the Court of Appeals was correct in reversing a defendant's conviction under the Sixth Amendment without inquiring into counsel's actual performance or requiring the defendant to show the effect it had on the trial.    466 U.S., at 650, 658, 104 S.Ct. 2039. We determined that the court had erred and remanded to allow the claim to be considered under *Strickland's* test.    466 U.S., at 666-667, and n. 41, 104 S.Ct. 2039.    In the course of deciding this question, we identified three situations implicating the right to counsel that involved circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified."    *Id.*, at 658-659, 104 S.Ct. 2039.

**\*1851**    First and "[m]ost obvious" was the "complete denial of counsel." *Id.*, at 659, 104 S.Ct. 2039.    A trial would be presumptively unfair, we said, where the accused is denied the presence of counsel at "a critical stage," *id.*, at 659, 662, 104 S.Ct. 2039, a phrase we used [535 U.S. 696] in *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), and *White v. Maryland*, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963)

© 2007 Thomson/West. No claim to original U.S. Govt. works.

122 S.Ct. 1843, 535 U.S. 685, Bell v. Cone, (U.S. 2002)

*(per curiam)*, to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused. (FN3) Second, we posited that a similar presumption was warranted if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic, supra,* at 659, 104 S.Ct. 2039. Finally, we said that in cases like *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), where counsel is called upon to render assistance under circumstances where competent counsel very likely could not, the defendant need not show that the proceedings were affected. *Cronic, supra,* at 659-662, 104 S.Ct. 2039.

[5][6] Respondent argues that his claim fits within the second exception identified in *Cronic* because his counsel failed to "mount some case for life" after the prosecution introduced evidence in the sentencing hearing and gave a closing statement. Brief for Respondent 26. We disagree. When we [535 U.S. 697] spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Cronic, supra,* at 659, 104 S.Ct. 2039 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic,* this difference is not of degree but of kind. (FN4)

* The aspects of counsel's performance challenged by respondent—the failure to *1852 adduce mitigating evidence and the waiver of closing argument— are plainly of the same ilk as other specific attorney errors we have held subject to *Strick*[535 U.S. 698]*land* performance and prejudice components. In *Darden v. Wainright,* 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986), for example, we evaluated under *Strickland* a claim that counsel was ineffective for failing to put on any mitigating evidence at a capital sentencing hearing. In *Burger v. Kemp,* 483 U.S. 776, 788, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987), we did the same when presented with a challenge to counsel's decision at a capital sentencing hearing not to offer any mitigating evidence at all. *

We hold, therefore, that the state court correctly identified the principles announced in *Strickland* as those governing the analysis of respondent's claim. Consequently, we find no merit in respondent's contention that the state court's adjudication was contrary to our clearly established law. Cf. *Williams,* 529 U.S., at 405, 120 S.Ct. 1495 ("The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed' " (quoting Webster's Third New International Dictionary 495 (1976))).

© 2007 Thomson/West. No claim to original U.S. Govt. works.

# EXHIBIT COVER PAGE 

EXHIBIT

Description of this Exhibit:

Excerpts of The Federal
couets Ruling in U.S. V.
Swanson"Denial of counsel
at a critical Stage of trial."

Number of pages to this Exhibit: 17 pages.

JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [✓] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury

*[handwritten:] In holding that cross examination is a critical stage of trial.*

Citation/Title
943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

**\*1070**   943 F.2d 1070

United States Court of Appeals,
Ninth Circuit.

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Brent Paul SWANSON, Defendant-Appellant.**

**No. 90-10085.**

Argued and Submitted March 8, 1991.

Decided Aug. 27, 1991.

  Defendant was convicted in the United States District Court for the
District of Arizona, Earl H. Carroll, J., of bank robbery, and he appealed.
The Court of Appeals, Alarcon, Circuit Judge, held that court-appointed
defense counsel's concession, during closing argument, that no reasonable
doubt existed regarding only factual issues in dispute, constituted
deprivation of right to due process and effective assistance of counsel that
was prejudicial per se.

  Reversed.

  Hug, Circuit Judge, concurred and filed opinion.

  Wiggins, Circuit Judge, dissented and filed opinion.

West Headnotes

[1]  Criminal Law ⚖1139

    110 ----
      110XXIV Review
        110XXIV(L) Scope of Review in General
        110k1139 Additional Proofs and Trial De Novo.

  Whether defendant received ineffective assistance of counsel is legal
question reviewed de novo.

[2]  Criminal Law ⚖1134(3)

    110 ----
      110XXIV Review

  © 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

> 110XXIV(L) Scope of Review in General
> 110k1134 Scope and Extent in General
> 110k1134(3) Questions Considered in General.

  Appellate court may consider contention of ineffective assistance of counsel on direct appeal where record is sufficiently complete to allow court to decide issue.  U.S.C.A. Const.Amend. 6.

[3]  Constitutional Law ⚮266(7)

> 92  ----
> 92XII Due Process of Law
> 92k256 Criminal Prosecutions
> 92k266 Rules of Evidence in General
> 92k266(7) Presumptions, Burden of Proof, and Weight of Evidence.

  [See headnote text below]

[3]  Criminal Law ⚮641.13(2.1)

> 110  ----
> 110XX Trial
> 110XX(B) Course and Conduct of Trial in General
> 110k641 Counsel for Accused
> 110k641.13 Adequacy of Representation
> 110k641.13(2) Particular Cases and Problems
> 110k641.13(2.1) In General.

>   (Formerly 110k641.13(2))

  When defense attorney concedes that there is no reasonable doubt concerning only factual issues in dispute, Government has not been held to its burden of persuading jury that defendant is guilty, and thus defendant has been deprived of due process.  U.S.C.A. Const.Amend. 5.

[4]  Criminal Law ⚮641.13(1)

> 110  ----
> 110XX Trial
> 110XX(B) Course and Conduct of Trial in General
> 110k641 Counsel for Accused
> 110k641.13 Adequacy of Representation
> 110k641.13(1) In General.

  Requirement that defendant alleging counsel's ineffectiveness show prejudice is applicable in cases where record reflects that attorney's

© 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

errors or omissions occurred during inept attempt to present defense, or that attorney engaged in unsuccessful tactical maneuver that was intended to assist defendant in obtaining favorable ruling;  proof of prejudice is required where fundamental fairness of challenged proceeding has not been affected and integrity of legal process has not been jeopardized.  U.S.C.A. Const.Amend. 6.

[5]  Criminal Law ☞641.13(2.1)

 110 ----
  110XX Trial
   110XX(B) Course and Conduct of Trial in General
   110k641 Counsel for Accused
    110k641.13 Adequacy of Representation
     110k641.13(2) Particular Cases and Problems
      110k641.13(2.1) In General.

   (Formerly 110k641.13(2))

 Court-appointed defense counsel's concession, during closing argument, that no reasonable doubt existed regarding only factual issues in dispute, constituted deprivation of right to due process and effective assistance of counsel that was prejudicial per se;  abandonment of defense was inherently prejudicial, and thus no separate showing of prejudice was necessary. U.S.C.A. Const.Amends. 5, 6.

 *1071  Dennis Jones, Phoenix, Ariz., for appellant.

 Janet L. Patterson and Darcy A. Cerow, Asst. U.S. Attys., Washington, D.C., for appellee.

 Appeal from the United States District Court for the District of Arizona.

 Before HUG, ALARCON and WIGGINS, Circuit Judges.

 ALARCON, Circuit Judge:

 Brent Paul Swanson appeals from his conviction and sentence for bank robbery.  We must decide whether a court appointed defense counsel's concession, during closing argument, that no reasonable doubt exists regarding the only factual issues in dispute, constitutes a deprivation of the right to due process and the effective assistance of counsel that is prejudicial per se.  We conclude that we must reverse because counsel's abandonment of his client's defense caused a breakdown in our adversarial system of justice.

<em>PERTINENT FACTS</em>

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 4

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

On February 22, 1989, Swanson was indicted on one count of bank robbery, pursuant to 18 U.S.C. § 2113(a). Swanson initially pleaded guilty on April 17, 1989. Swanson made a motion to withdraw his plea of guilty after reading the recommendation in the presentence report that he should be sentenced as a career offender. The motion was granted and the court selected a date for a trial by jury.

The jury trial commenced on July 25, 1989. Swanson was represented at trial by David Ochoa, who was appointed by the trial court under the Criminal Justice Act. 18 U.S.C. § 3006A(b). Mr. Ochoa rested after the close of the Government's case in chief, without calling any defense witnesses.

Before counsel presented their arguments, the trial court gave the jury instructions to assist it in considering the evidence in the case. The jury was admonished that "[t]he Government has the burden of proving every element of a charge beyond a reasonable doubt. If it fails to do so, you must return a not guilty verdict as to the charge." The Government concluded its opening argument by stating, "[b]ased on all [the] evidence, the Government has proven to you beyond any reasonable doubt that Mr. Swanson robbed Citibank on January 20th, 1989."

Mr. Ochoa began his argument by stating that it is a defense attorney's "job" to make the Government prove its case beyond a reasonable doubt. Mr. Ochoa told the jurors that in this country a person has a right to stand by his plea of not guilty. Mr. Ochoa then stated that the evidence against Swanson was overwhelming and that he was not going to insult the jurors' intelligence.

Prior to discussing the inconsistencies in the testimony of the Government's identification witnesses, Mr. Ochoa stated, "[a]gain in this case, I don't think it really overall comes to the level of raising reasonable doubt." After pointing out that the witnesses had varied in their recollection of the length of time the perpetrator was in the bank, Mr. Ochoa told the jury, "the only reason I point this out, not because I am trying to raise reasonable doubt now, because again I don't want to insult your intelligence...." He concluded his argument by telling the jurors that if they found Swanson guilty they should not "ever look back" and agonize regarding whether they had done the right thing. (FN1)

### *1072 DISCUSSION

[1] Swanson contends that he was denied his right to the effective assistance of counsel because his court appointed attorney conceded in his argument to the jury that there was no reasonable doubt regarding the only factual issues in dispute. "Whether a defendant received ineffective assistance of counsel is a legal question reviewed de novo." *Smith v. Ylst,*

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 5

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

826 F.2d 872, 875 (9th Cir.1987), *cert. denied,* 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988).

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."   The Supreme Court has instructed that "[t]he Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

[2] Although ineffective assistance of counsel claims are frequently presented in collateral attacks on judgments in criminal matters, we are not prevented from considering such contentions on direct appeal where "the record is sufficiently complete to allow us to decide the issue." *United States v. O'Neal,* 910 F.2d 663, 668 (9th Cir.1990).   Where the record on appeal is not adequate to determine whether there has been a deprivation of the sixth amendment's protection, "[t]he customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255." *United States v. Birges,* 723 F.2d 666, 670 (9th Cir.), *cert. denied,* 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472 (1984).   In a habeas corpus proceeding, the petitioner may present facts that are not reflected in a record of the proceedings of a trial on the issue of guilt. *United States v. Sanclemente-Bejarano,* 861 F.2d 206, 211 (9th Cir.1988);   *United States v. Kazni,* 576 F.2d 238, 242 (9th Cir.1978).   In pursuing his claim of ineffectiveness of counsel, Swanson relies solely on the reported statements made by Mr. Ochoa during final argument.   Accordingly, the record is sufficient for a review of the merits of Swanson's constitutional claim on this direct appeal.   Under these circumstances, we are required to resolve the effectiveness of counsel claim now.   There is no reason to delay resolution of this issue in this matter for the presentation of facts outside the trial record.

The Government argues that Swanson's ineffective assistance of counsel claim must fail because there is no showing that Mr. Ochoa's closing argument was prejudicial under the test established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).   In *Strickland,* the Court held that a defendant is required to show (1) deficient performance by counsel, and (2) prejudice to the defense.   *Id.* at 687, 104 S.Ct. at 2064.   In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), decided on the same date as *Strickland,* "the Supreme Court created an exception to the *Strickland* standard for ineffective assistance of counsel and acknowledged that certain circumstances are so egregiously prejudicial that ineffective assistance of counsel will be presumed." *Stano v. Dugger,* 921 F.2d 1125, 1152 (11th Cir.1991) (en banc) (citing *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046). "

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 6

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

*Cronic* presumes prejudice where there has been an actual breakdown in the adversarial process at trial." *Toomey v. Bunnell*, 898 F.2d 741, 744 n. 2 (9th Cir.), *cert. denied*, 498 U.S. 960, 111 S.Ct. 390, 112 L.Ed.2d 400 (1990). In *Cronic*, the Supreme Court stated:

> [T]he adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." *Anders v. California*, 386 U.S. 738, 743 [87 S.Ct. 1396, 1399, 18 L.Ed.2d 493] (1967) . The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted--even if defense counsel may **\*1073** have made demonstrable errors--the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Cronic*, 466 U.S. at 656-57, 104 S.Ct. at 2045-46 (footnotes omitted).

[3] A criminal defendant is also protected from unfairness in the criminal process by the due process requirement that his guilt be proved beyond a reasonable doubt. The Supreme Court has explicitly held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The Supreme Court has also stated that "[d]ue process commands that no man shall lose his liberty unless *the Government has borne the burden of* producing the evidence and *convincing the factfinder of his guilt.* " *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) (emphasis added). When a defense attorney concedes that there is no reasonable doubt concerning the only factual issues in dispute, the Government has not been held to its burden of persuading the jury that the defendant is guilty.

The Supreme Court recognized in *Cronic* that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046. The Court identified the complete denial of counsel or the deprivation of effective representation at a critical stage of an accused's trial as justifying a presumption of prejudice. *Id.* at 659, 104 S.Ct. at 2047. The Supreme Court stated that

> [c]ircumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 7

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

*Id.* at 659-60, 104 S.Ct. at 2047.

[4] The *Strickland* test, requiring a showing of prejudice caused by counsel's ineffectiveness, is applicable (1) in cases where the record reflects that an attorney's errors or omissions occurred during an inept attempt to present a defense, or (2) that he or she engaged in an unsuccessful tactical maneuver that was intended to assist the defendant in obtaining a favorable ruling. *See, e.g., Harding v. Lewis,* 834 F.2d 853, 859 (9th Cir.1987) (attorney's advice to criminal defendant that he should insist on representing himself as a deliberate means of injecting reversible error into the proceedings is not presumed prejudicial), *cert. denied,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); *McInerney v. Puckett,* 919 F.2d 350, 353 (5th Cir.1990) (defense counsel's failure to file a timely notice of insanity defense and lack of preparation for trial do not warrant application of per se rule of prejudice); *Woodard v. Collins,* 898 F.2d 1027, 1029 (5th Cir.1990) (counsel's tactical decision to investigate some issues but not others, or to conduct virtually no investigation, is governed by *Strickland,* not by *Cronic* ); *Gardner v. Ponte,* 817 F.2d 183, 187 (1st Cir.) (ineffective assistance of counsel claim based on counsel's failure to object to a jury instruction requires a showing of prejudice to the defense pursuant to *Strickland* rather than *Cronic* ), *cert. denied,* 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987).

Proof of prejudice is also required where the fundamental fairness of the challenged proceeding has not been affected and the integrity of the legal process has not been jeopardized. *See, e.g., United States v. Perry,* 857 F.2d 1346, 1350 (9th Cir.1988) (issuance by the Government of a post-indictment subpoena of a target defendant's counsel does not "jeopardize[ ] the integrity of the legal process"); *United States v. Birtle,* 792 F.2d 846, 848 (9th Cir.1986) ("The failure of counsel to appear at oral argument or to file a reply brief is not so essential to the fundamental fairness
**\*1074** of the appellate process as to warrant application of a per se rule of prejudice.").

[5] We are persuaded that Mr. Ochoa's conduct caused a breakdown in our adversarial system of justice in this case that compels an application of the *Cronic* exception to the *Strickland* requirement of a showing that the outcome of the trial would have been different without counsel's errors or omissions. *See Cronic,* 466 U.S. at 659-60, 104 S.Ct. at 2047. Mr. Ochoa's concession in his argument to the jury that there was no reasonable doubt concerning the element of intimidation, and whether Swanson was the perpetrator of the bank robbery, does not demonstrate mere negligence in the presentation of his client's case or a strategy to gain a favorable result that misfired. Instead, Mr. Ochoa's statements lessened the Government's burden of persuading the jury that Swanson was the perpetrator of the bank robbery. Mr. Ochoa's conduct tainted the integrity of the trial. The

© 2005 Thomson/West. No claim to original U.S. Govt. works.