943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

Supreme Court instructed in *Cronic* that "if counsel entirely fails to
subject the prosecution's case to meaningful adversarial testing, then there
has been a denial of Sixth Amendment rights that makes the adversary process
itself presumptively unreliable." *Cronic*, 466 U.S. at 659, 104 S.Ct. at
2047.

   Mr. Ochoa's closing argument was not merely a negligent misstep in an
attempt to champion his client's cause.  The concession that there was no
reasonable doubt that his client robbed the bank was an abandonment of the
defense of his client at a critical stage of the criminal proceedings.  In
*Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the
Supreme Court recognized the importance of the closing argument to a
criminal defendant.  The Court found that a New York law which allowed every
judge in a non-jury criminal trial to deny counsel any opportunity to make a
closing argument deprived the accused of his constitutional right to the
assistance of counsel.  *Id.* at 865, 95 S.Ct. at 2556.   The Court stated
that

       [t]he very premise of our adversary system of criminal justice is
   that partisan advocacy on both sides of a case will best promote the
   ultimate objective that the guilty be convicted and the innocent go free.
   In a criminal trial, which is in the end basically a factfinding process,
   no aspect of such advocacy could be more important than the opportunity
   finally to marshal the evidence for each side before submission of the
   case to judgment.

*Id.* at 862, 95 S.Ct. at 2555.

   A lawyer who informs the jury that it is his view of the evidence that
there is no reasonable doubt regarding the only factual issues that are in
dispute has utterly failed to "subject the prosecution's case to meaningful
adversarial testing." *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047.   The
Tenth Circuit has recognized that "an attorney who adopts and acts upon a
belief that his client should be convicted 'fail[s] to function in any
meaningful sense as the Government's adversary.' " *Osborn v. Shillinger*,
861 F.2d 612, 625 (10th Cir.1988) (quoting *Cronic*, 466 U.S. at 666, 104
S.Ct. at 2051).   Mr. Ochoa's statements conveyed to the jury his belief
that his client was guilty.  Mr. Ochoa failed to function as the
Government's adversary during his summation to the jury.

   It is not necessary that a defendant demonstrate that a deprivation of the
assistance of counsel at a critical stage of a criminal proceeding resulted
from governmental action.  In *Javor v. United States*, 724 F.2d 831 (9th
Cir.1984), we held that "when an attorney for a criminal defendant sleeps
through a substantial portion of the trial, such conduct is inherently
prejudicial and thus no separate showing of prejudice is necessary." *Id.* at

© 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

853.

In *Green v. Arn*, 809 F.2d 1257 (6th Cir.), *vacated on other grounds*, 484 U.S. 806, 108 S.Ct. 52, 98 L.Ed.2d 17 (1987), *reinstated*, 839 F.2d 300 (1988), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 979 (1989), the Sixth Circuit held that the absence of a criminal defendant's counsel, during the cross-examination of a key government witness by an attorney for a codefendant, violated the defendant's sixth amendment right to counsel. *Id.* at 1263.  The court held that these circumstances *1075 compelled reversal without further inquiry regarding the impact of this constitutional deprivation.  *Id.*

The Seventh Circuit has held that a criminal defendant was denied the assistance of counsel at a critical stage of the criminal proceedings when his attorney was absent when the verdict was returned. *Siverson v. O'Leary*, 764 F.2d 1208, 1217 (7th Cir.1985).  The court held that "a defendant need not affirmatively prove prejudice under the second prong of the *Strickland* test in order to establish a Sixth Amendment violation based on the lack of defense counsel's assistance at a critical stage of the criminal proceedings."  *Id.*

In *Harding v. Davis*, 878 F.2d 1341 (11th Cir.1989), court appointed counsel for a defendant in a state criminal proceeding remained silent throughout most of the trial and failed to object when the court directed a verdict against the defendant. *Id.* at 1343.  The Eleventh Circuit held that the attorney's "silence at the point the verdict was directed against his client was so likely to prejudice [the defendant] that the cost of litigating its effect is unjustified and prejudice is presumed." *Id.* at 1345 (citing *Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046).

In each of these cases prejudice was presumed, because of an actual or constructive denial of the assistance of counsel during a critical stage of the criminal proceedings. *See Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").  The circumstance presented in this matter demonstrates the constructive absence of an attorney dedicated to the protection of his client's rights under our adversarial system of justice.  Once Swanson's court appointed attorney told the jury that there was no reasonable doubt regarding his client's identity as the perpetrator of the crime charged against him, he ceased to function as defense counsel.  "An effective attorney 'must play the role of an active advocate, rather than a mere friend of the court.' "  *Osborn*, 861 F.2d at 624 (quoting *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985)).  Instead of serving as his client's advocate during closing argument, Mr. Ochoa abandoned his client at a critical stage of the proceedings and affirmatively aided the prosecutor in her efforts to

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 10

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

persuade the jury that there was no reasonable doubt that Swanson was the person who intimidated the victims and robbed the bank.

Mr. Ochoa's abandonment of his duty of loyalty to his client by assisting the prosecutor also created a conflict of interest. In *Osborn,* the Tenth Circuit commented as follows:

A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction or death sentence suffers from an obvious conflict of interest. Such an attorney, like unwanted counsel, " 'represents' the defendant only through a tenuous and unacceptable legal fiction." *Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). In fact, an attorney who is burdened by a conflict between his client's interests and his own sympathies to the prosecution's position is considerably worse than an attorney with loyalty to other defendants, because the interests of the state and the defendant are necessarily in opposition.

861 F.2d at 629.

The Government has failed to identify any strategy that can justify Mr. Ochoa's betrayal of his client. "[E]ven when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt." *Cronic,* 466 U.S. at 656-57 n. 19, 104 S.Ct. at 2045-46 n. 19. By arguing that no reasonable doubt existed regarding the only factual issues in dispute, Mr. Ochoa shouldered part of the Government's burden of persuasion.

We cannot envision a situation more damaging to an accused than to have his own attorney tell the jury that there is no reasonable doubt that his client was the person who committed the conduct that constituted the crime charged in the indictment. We recognize that in some cases a  **\*1076**  trial attorney may find it advantageous to his client's interests to concede certain elements of an offense or his guilt of one of several charges. *See United States v. Bradford,* 528 F.2d 899, 900 (9th Cir.1975) (counsel conceded that the evidence identifying the defendants as the perpetrators was overwhelming, but argued that other elements of the crime were not proved in an attempt to persuade the jury to find the defendants guilty only of a lesser offense), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1512, 47 L.Ed.2d 764 (1976). Mr. Ochoa's conduct was not a tactical admission of certain facts in order to persuade the jury to focus on an affirmative defense such as insanity. *See Duffy v. Foltz,* 804 F.2d 50, 52 (6th Cir.1986) (counsel's admission that his client committed the acts alleged but that he was not guilty by reason of insanity considered to be a trial tactic). Here, Mr. Ochoa told the jury that no reasonable doubt existed as to his client's identity as the perpetrator of the only crime charged in the indictment.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

During oral argument, the Government expressed concern about its inability to prevent an attorney from repeating Mr. Ochoa's conduct in future trials in order to guarantee a reversal on appeal in any case where the evidence of guilt is overwhelming.  In *Toomey v. Bunnell,* 898 F.2d 741 (9th Cir.), *cert. denied,* 498 U.S. 960, 111 S.Ct. 390, 112 L.Ed.2d 400 (1990), and *Harding v. Lewis,* 834 F.2d 853 (9th Cir.1987), *cert. denied,* 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988), we rejected the contention that the commission of deliberate misconduct by a defense attorney with his client's connivance warranted a per se rule of prejudice.  *Toomey,* 898 F.2d at 744 n. 2; *Harding,* 834 F.2d at 859.  We declined to create a "foolproof defense." *Id.*  There is no evidence in this record that Swanson conspired with his court appointed attorney to create reversible error in this matter.  Our holding that a per se rule of prejudice is required under the facts presented in this record will not create a "foolproof defense" for criminal defendants.  Criminal defense lawyers are bound by the rules of professional conduct.  If these rules are violated, counsel will expose himself to bar association discipline.  We are confident that ethical defense lawyers will not emulate Mr. Ochoa's conduct in this matter to gain a temporary advantage over the Government.  We strongly suspect that there will be a retrial in this matter.  We do not anticipate that defense counsel's indefensible tactic will be repeated.

The American Bar Association Standards for Imposing Lawyer Sanctions provide that "[r]eprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client."  Std. 4.43.  The Arizona Rules of Professional Conduct provide that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."  17A A.R.S. Sup.Ct. Rules, Rules of Professional Conduct, Rule 42, ER 1.3.  The comment to ER 1.3 states that "[a] lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."  Violation of these standards should be reported by the court and opposing counsel. *See, e.g.,* American Bar Association Model Code of Professional Responsibility, Canon 1, EC 1-4 ("A lawyer should reveal voluntarily to [proper] officials all unprivileged knowledge of conduct of lawyers which he believes clearly to be in violation of the Disciplinary Rules.");  17A A.R.S. Sup.Ct. Rules, Code of Judicial Conduct, Rule 81, Canon 3B(3) ("A judge should report what he believes clearly to be professional misconduct of a judge or lawyer to the appropriate disciplinary agency.").  The clerk is directed to serve a copy of this opinion on the State Bar of Arizona.

REVERSED.

APPENDIX

Mr. Ochoa:  May it please the Court, Ms. Cerow [the prosecutor], ladies

© 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

and gentlemen of the jury, again this is my last chance to talk to you and the first thing I want to do, like Ms. Cerow, I want to thank you for serving as jurors in this case.

**\*1077**  It's been a very short case, but you have played a very, very significant role in our judicial system and because you took the time to serve as jurors I do want to thank you for that.

I'm not going to sit up here or stand up here and insult your intelligence, but I do want to give you a little lesson on criminal justice.

Each one has a role in this courtroom.  She [Ms. Cerow] has a duty of presenting evidence to try to prove my client guilty beyond a reasonable doubt.

My job as an attorney is to try to raise reasonable doubt, or to make sure that she proves her case beyond a reasonable doubt.

The Judge as he sits up there, he is not the judge of the facts.  The only thing that he does up here, he controls the law, and makes decisions on the law.  He has made decisions both in Court and out of Court that pertain to the law that you have no concern about.  But that is his function.

Ultimately you will have the function to determine the facts from the testimony of the witnesses, and then ultimately to determine whether my client is guilty or not.  That is how our judicial system works and it works very well, because people like yourselves are willing to serve.

But one thing I do want you to appreciate, I, like I said, *the evidence in this case, ladies and gentlemen, is overwhelming and I'm not going to sit here and insult your intelligence.*

I have--the reason why I want to come before you, I told you to listen to all that evidence, for reasons that are not to concern you, you do not--I don't have that now, but I still want you to know something, that a person in this country has the right to stand by his plea of not guilty.

That is not true in many other countries.  In a lot of countries a person is presumed guilty and he must prove his innocence.  But in our country a person is presumed innocent and it is the Government that must prove him guilty.

And that works very well, it protects our citizens, it protects you and it protects anyone in this country that is charged with a crime and until 12 people, members of his peers, find him to be guilty, then, and only then, is he found guilty.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

He has chosen to exercise that, ladies and gentlemen, and regardless of what you do inside there, don't hold that against him, because he has exercised a constitutional right.

Now, just to give you some examples of why we sometimes go to trial, *even though I don't think in this case it comes to the level of reasonable doubt,* but why you do have trials and why sometimes even witnesses--you have heard testimony from some of the different witnesses. And even themselves on a short case, a simple case, there was inconsistency.

*Again in this case, I don't think it really overall comes to the level of raising reasonable doubt.* But this is my function. You will recall some-- one witness said that my client was in the bank maybe one to two minutes and another one said two to three minutes, and another one said, anywhere from 10 to 15 minutes.

One witness even said that my client had a shirt, or his tie untied. If you will look at the photograph, you will see that it was perfectly tied up.

So see these are little inconsistencies that witnesses sometimes make.

Some witnesses said that they clearly heard my client say that "This is a bank robbery." But there were a couple of witnesses--one witness Ms. Mullen, Lisa McMullen, right next to Ms. Estrella, who never heard that.

*And, I only--the only reason I point this out, not because I am trying to raise reasonable doubt now, because again I don't want to insult your intelligence, but I do point this out that these are the reasons why you go* to trial sometimes.

And I just don't want you to think that the Government, the Court, and all, that are wasting their money in things like this. There is a specific reason and I want you to appreciate it, that you received a good lesson in the judicial system.

**\*1078** I wish I had more on behalf of my client to argue, but like I say, just like the Government, I don't make the facts. I have to live with the facts and my client has to live with those facts and I have to live with them too.

As an attorney I would be derelict in my duty if I didn't try to raise reasonable doubts. There is some question as to some of the things that took place in that bank, but *ultimately I believe there was intimidation* and for me to tell you that those clerks were not in fear, and you as women--are women and most of those clerks were women, for me to say that they were not fearful, I think that would be begging the issue.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

But again, ladies and gentlemen, regardless of what you do in there, I do want to thank you for serving as jurors and I do hope you go away with a better understanding of our system.

And sometimes many people ask me, "Why do you defend someone when the evidence is overwhelming?"   Because I am defending the system.   I am defending a tradition.   I am defending something that is very sacred to our form of Government, and that is that a man is presumed innocent until proven guilty.

*And if he is proven guilty, don't hesitate in saying so and when you go home tonight don't ever look back and say "Did I do the right thing?"*   If your conscience dictates that that was the right thing to do, you have done your part, just like the Judge has done his part, and I have done my part, and Ms. Cerow has done her part.

Again, ladies and gentlemen, I want to thank you for serving on this jury.

Thank you very much.

July 26, 1989, Reporter's Transcript at 212-16 (emphasis added).

HUG, Circuit Judge, concurring opinion:

I add this concurring opinion to emphasize my strong feeling that the representation afforded by the defense counsel in this case undermines the basis of the adversary system.   To the extent that the dissent characterizes the defense counsel's representation as adequate or fulfilling the responsibilities of defense counsel, I most strongly disagree.

Defense counsel apparently believed that he fulfilled his obligation to the defendant by giving a little lecture on the operation of the criminal justice system.   He failed to note that his obligation is not to be an independent observer and factfinder but, instead, an advocate for his client.

The American system of law is based on the adversary system--the prosecution presents the case in the light most persuasive to the Government's point of view;  the defense counsel is to defend the case in the way that can best represent the defendant.   The judge instructs on the law, and the jury renders the verdict.   It is not the function of the defense counsel to insert his personal opinion as to whether a reasonable doubt has been established.   That is for the jury.

I don't see how defense counsel's argument can be read other than that, in his opinion, he finds no reasonable doubt as to the guilt of the defendant. However, even if read, as the dissent contends, that counsel is just

© 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

referring to certain elements of the case--identification and intimidation--
these were the only possible bases for acquittal.  Defense counsel is, in
effect, saying that in his opinion there is no basis for acquitting the
defendant.

In my opinion, he, in effect, said the defendant is guilty, and members of
the jury should not feel bad about finding him guilty.  This not only fails
to uphold the responsibility of defense counsel, but it is also wrong from
another standpoint.  There are many cases that uphold admonitions by the
trial court that defense counsel is not to inform the jury of his or her
opinion of the guilt or innocence of the defendant.  Customarily, this is
when defense counsel asserts, in effect, "I believe this man is innocent
because otherwise I would not be here defending him."  This is universally
held to be an improper argument.  *United States v. Young,* 470 U.S. 1, 8-9,
105 S.Ct. 1038, 1042-43, 84 L.Ed.2d 1 (1984) ("Defense counsel, like the
prosecutor, must refrain from interjecting personal *1079 beliefs into the
presentation of his case") (citations omitted);  *United States v. Swafford,*
766 F.2d 426 (10th Cir.1985) ("... a lawyer's assertion of personal opinion
during trial is an example of improper advocacy");  *United States v. Singer,*
660 F.2d 1295 (8th Cir.1981) ("[a] personal expression of [a] defendant's
culpability, which inserts an extraneous and irrelevant issue before the
jury, is ... objectionable"), *cert.* *denied,* 454 U.S. 1156, 102 S.Ct. 1030,
L.Ed.2d 314 (1982);  *United States v. Alanis,* 611 F.2d 123 (5th Cir.)
(an attorney may not express his personal opinion regarding a defendant's
guilt), *cert.* *denied,* 445 U.S. 955, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980);
*United States v. Bess,* 593 F.2d 749 (6th Cir.1979) (personal opinions of
counsel have "no place at trial");  *United States v. Cain,* 544 F.2d 1113
(1st Cir.1976) ( "It is, of course, elementary that statements of counsel as
to personal belief or opinion are improper").

Here, this counsel is doing the same thing in reverse.  "I know he's
guilty so don't feel bad about doing your job and finding him guilty."  He
is just as much invading the province of the jury in this situation.

The defense counsel in this case had several options if he felt there was
nothing he could say in reviewing the evidence that would be helpful to his
client.  First, he could have waived final argument and simply left the
matter to the jury.  Second, and preferably, he could have emphasized that
in our criminal system a defendant can be found guilty only if guilt is
found beyond a reasonable doubt and why that is an important factor in our
system of justice.  He could then have said:  "You members of the jury have
heard the evidence in this short trial and there is no point in my reviewing
the evidence and the doubts and questions involved.  It is up to you to
evaluate the evidence and perform your vital responsibility in determining
whether the Government has proved its case beyond a reasonable doubt."
Third, the attorney could have made the same basic kind of remarks and tried
to point out inconsistencies and weaknesses in the prosecution's case.  He

© 2005 Thomson/West. No claim to original U.S. Govt. works.

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

certainly was not obligated nor ethically authorized to do what he did.

In short, the defense counsel may have been inexperienced;  he may not have understood his proper role;  but certainly this type of performance by defense counsel cannot be condoned as being in any way adequate in meeting the standards of the legal profession.

WIGGINS, Circuit Judge, Dissenting:

I respectfully dissent from the views of my colleagues.  They conclude that the few random expressions of defense counsel during closing argument constituted a "betrayal of his client," Maj.  Op. p. 1076, sufficient to require a reversal without a showing of prejudice as permitted by *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).  I disagree.

In my view, the majority is excessive in its condemnation of defense counsel.  It accuses him of 1) causing a "breakdown in our adversarial system of justice," Maj.  Op. p. 1075;  2) "taint[ing] the integrity of the trial", *id.;*  3) "lessening the Government's burden of persuading the jury that Swanson was the perpetrator of the bank robbery," *id.;*  and 4) engaging in an "abandonment of the defense of his client at a critical stage of the criminal proceeding." *Id.*  One would expect such powerful criticism to be justified by the grossest form of misbehavior by counsel.  I fail to find it here.

Defense counsel found himself in a position that is perhaps all too familiar to the defense bar.  His client had in fact engaged in the act for which he was indicted.  The government had, and offered, the evidence necessary to prove it.  Four bank employees identified Swanson as the robber.  Two photographs of Swanson engaged in robbing the bank, taken by the bank's surveillance camera, were admitted into evidence.  Swanson's fingerprints were found at the bank after the robbery.  Swanson offered no defense witnesses and did not testify.

In these circumstances, the options available to defense counsel were exceedingly limited.  His offer to establish that his  **\*1080.** client was depressed and sought psychiatric help on the day of the robbery was denied prior to trial.  Counsel's only recourse was to cross-examine the government's witnesses carefully.  He did so, but was unable to cause any witness to express any uncertainty as to her identification of Swanson as the robber.  When all was said and done, counsel was compelled to rely upon his argument to the jury.  What was he to say?  His client had offered no defense.  His cross-examination of witnesses, which presented only minor inconsistencies on trivial matters, developed no holes in the government's case.  Under these circumstances, defense counsel, I think, did his best.  The majority has helpfully reproduced the entire closing argument as an

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 17

943 F.2d 1070, U.S. v. Swanson, (C.A.9 (Ariz.) 1991)

appendix to their opinion.  Read carefully, it is apparent that counsel
characterized the government's evidence as "overwhelming" and not raising a
"reasonable doubt" in certain particulars.  There is no question that
counsel was accurate in his characterizations.  However, the majority
condemns him for his statements and directs its opinion to the Arizona State
Bar for appropriate disciplinary proceedings against counsel.

   It is easy to condemn from our vantage point.  We are not before the jury,
empty handed, yet charged with the duty of providing an honest defense.  We
should, I believe, view counsel's performance less critically.  He did not
concede that his client was guilty.  He did, however, admit that there was
no reasonable doubt that one element of the government's case was true,
namely, that the bank clerks were intimidated by the robber.  Such an
admission did not cause a collapse in the adversarial system, it did not
taint the integrity of the trial, nor was it an abandonment by counsel of
his client's defense.  If it was error at all, it was not of the fundamental
sort necessary to trigger the *Cronic* exception.

   Because I believe the rule in *Cronic* is inappropriate here, I would apply
the analysis of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984).  Under *Strickland*'s prejudice prong, I would find that
any error made by defense counsel was not prejudicial, and would therefore
affirm Swanson's conviction.  (FN1)

   (FN1.) The full text of Mr. Ochoa's closing argument is attached as an
   appendix to this opinion.

   (FN1.) I have reviewed the trial and sentencing errors asserted by
   Swanson's new counsel on appeal and find them to be without merit.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

# EXHIBIT COVER PAGE

FOUR
EXHIBIT

Description of this Exhibit:

Excerpts of the U.S. supreme Ruling in Chronic "denial of counsel at a critical stage of trial."

Number of pages to this Exhibit: 15 pages.

JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [x] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                    Page 2

advice falls within the range of reasonable
competence under the circumstances. U.S.C.A.
Const.Amend. 6.

[6]  Criminal Law ☜641.13(1)

    110 ----
        110XX Trial
        110XX(B) Course and Conduct of Trial in
General
        110k641 Counsel for Accused
        110k641.13 Adequacy of Representation
        110k641.13(1) In General.

Type of breakdown in the adversarial process that
implicates the Sixth Amendment is not limited to
counsel's performance as a whole; specific errors
and omissions may be the focus of a claim of
ineffective assistance as well. U.S.C.A.
Const.Amend. 6.

[7]  Criminal Law ☜641.13(1)

    110 ----
        110XX Trial
        110XX(B) Course and Conduct of Trial in
General
        110k641 Counsel for Accused
        110k641.13 Adequacy of Representation
        110k641.13(1) In General.

While criminal trial is not a game in which the
participants are expected to enter the ring with a
near match in skills, neither is it a sacrifice of
unarmed prisoners to gladiators.

[8]  Criminal Law ☜641.13(1)

    110 ----
        110XX Trial
        110XX(B) Course and Conduct of Trial in
General
        110k641 Counsel for Accused
        110k641.13 Adequacy of Representation
        110k641.13(1) In General.

Appropriate inquiry in Sixth Amendment case
focuses upon the adversarial process, not on the
accused's relationship with his lawyer as such; if
counsel is a reasonably effective advocate, he meets
his constitutional standards, irrespective of his
client's evaluation of his performance. U.S.C.A.

Const.Amend. 6.

[9]  Criminal Law ☜641.13(2.1)

    110 ----
        110XX Trial
        110XX(B) Course and Conduct of Trial in
General
        110k641 Counsel for Accused
        110k641.13 Adequacy of Representation
        110k641.13(2) Particular Cases and Problems
        110k641.13(2.1) In General.

        (Formerly 110k641.13(2))

No weight would be attached either to defendant's
initial expression of satisfaction with counsel's
performance at the time of his trial or to defendant's
later expression of dissatisfaction.

[10]  Criminal Law ☜641.13(1)

    110 ----
        110XX Trial
        110XX(B) Course and Conduct of Trial in
General
        110k641 Counsel for Accused
        110k641.13 Adequacy of Representation
        110k641.13(1) In General.

Right to effective assistance of counsel is
recognized, not for its own sake, but because of the
effect it has on the ability of the accused to receive a
fair trial. U.S.C.A. Const.Amend. 6.

[11]  Criminal Law ☜323

    110 ----
        110XVII Evidence
        110XVII(B) Presumptions and Inferences
        110k305 Presumptions
        110k323 Particular Facts.

Court presumes that lawyer is competent to
provide the guiding hand that the defendant needs
and burden rests on the accused to demonstrate a
constitutional violation. U.S.C.A. Const.Amend. 6.

[12]  Criminal Law ☜641.3(2)

    110 ----
        110XX Trial

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)

110XX(B) Course and Conduct of Trial in General
110k641 Counsel for Accused
110k641.3 Stage of Proceedings as Affecting Right
110k641.3(2) Critical Stages.

(Formerly 110k641.3)

Trial is unfair if the accused is denied counsel at a critical stage of the trial. U.S.C.A. Const.Amend. 6.

[13] Criminal Law ☞641.13(1)

110 ----
110XX Trial
110XX(B) Course and Conduct of Trial in General
110k641 Counsel for Accused
110k641.13 Adequacy of Representation
110k641.13(1) In General.

If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, there has been a denial of Sixth Amendment rights which makes adversary process itself presumptively unreliable. U.S.C.A. Const.Amend. 6.

[14] Criminal Law ☞641.13(1)

110 ----
110XX Trial
110XX(B) Course and Conduct of Trial in General
110k641 Counsel for Accused
110k641.13 Adequacy of Representation
110k641.13(1) In General.

Only when surrounding circumstances justify a presumption of ineffectiveness can Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial. U.S.C.A. Const.Amend. 6.

[15] Criminal Law ☞641.13(1)

110 ----
110XX Trial
110XX(B) Course and Conduct of Trial in General
110k641 Counsel for Accused
110k641.13 Adequacy of Representation

110k641.13(1) In General.

[See headnote text below]

[15] Criminal Law ☞1166.10(1)

110 ----
110XXIV Review
110XXIV(Q) Harmless and Reversible Error
110k1166.5 Conduct of Trial in General
110k1166.10 Counsel for Accused
110k1166.10(1) In General.

(Formerly 110k1166.11(5), 110k1166.11)

Fact that accused can attribute a deficiency in his representation to a source external to trial counsel does not make it any more or *2039 less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect. U.S.C.A. Const.Amend. 6.

[16] Criminal Law ☞641.13(2.1)

110 ----
110XX Trial
110XX(B) Course and Conduct of Trial in General
110k641 Counsel for Accused
110k641.13 Adequacy of Representation
110k641.13(2) Particular Cases and Problems
110k641.13(2.1) In General.

(Formerly 110k641.13(2))

Fact that defendant's newly appointed counsel was given only 25 days to prepare for trial of case which it had taken the Government four and one-half years to investigate, fact that counsel was a young attorney primarily engaged in real estate practice and was trying his first criminal case, gravity of the charge of mail fraud against the defendant, complexity of the case, and inaccessibility of witnesses to counsel did not, individually or in combination provide a basis for concluding that competent counsel was not able to provide defendant with effective assistance of counsel; it was error to infer that right to counsel had been violated. U.S.C.A. Const.Amend. 6.

[17] Criminal Law ☞641.13(4)

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                                   **Page 4**

110 ----
    110XX Trial
    110XX(B) Course and Conduct of Trial in General
      110k641 Counsel for Accused
      110k641.13 Adequacy of Representation
      110k641.13(2) Particular Cases and Problems
      110k641.13(4) General Qualifications of Counsel.

Character of a particular lawyer's experience may shed light in an evaluation of his actual performance but it does not justify a presumption of ineffectiveness in the absence of such an evaluation. U.S.C.A. Const.Amend. 6.

[18] Criminal Law ☞641.13(2.1)

110 ----
    110XX Trial
    110XX(B) Course and Conduct of Trial in General
      110k641 Counsel for Accused
      110k641.13 Adequacy of Representation
      110k641.13(2) Particular Cases and Problems
      110k641.13(2.1) In General.

(Formerly 110k641.13(2))

Neither fact that trial counsel used notes to assist him during opening statement to the jury nor fact that counsel told the jury that it was counsel's first trial was so inherently inconsistent with a reasonable effective defense as to justify a presumption that defendant's trial was unfair.

[19] Criminal Law ☞1083

110 ----
    110XXIV Review
    110XXIV(F) Proceedings, Generally
      110k1083 Effect of Transfer or Proceedings Therefor.

District court had jurisdiction to entertain motion for new trial based on ineffective assistance of counsel even though case was pending on direct appeal; court could have denied the motion on its merits or certified its intention to grant the motion to the Court of Appeals, which could have entertained a motion for remand. Fed.Rules Cr.Proc.Rule 33, 18 U.S.C.A.

[20] Criminal Law ☞1192

110 ----
    110XXIV Review
    110XXIV(U) Determination and Disposition of Cause
      110k1192 Mandate and Proceedings in Lower Court.

Where Court of Appeals did not reach claim of actual ineffectiveness of counsel, because it reversed conviction based on presumption of ineffective assistance of counsel under the circumstances, claim of actual ineffectiveness remained open.

*Syllabus a l*

Respondent and two associates were indicted on mail fraud charges involving a "check kiting" scheme whereby checks were transferred between a bank in Florida and a bank in Oklahoma. When respondent's retained counsel withdrew shortly before the scheduled trial date, the District Court appointed a young lawyer with a real **\*2041** estate practice who had never participated in a jury trial to represent respondent, but allowed him only 25 days to prepare for trial, even though the Government had taken over four and one-half years to investigate the case and had reviewed thousands of documents during that investigation. Respondent was convicted, but the Court of Appeals reversed, because it inferred that respondent's right to the effective assistance of counsel under the Sixth Amendment had been violated. Finding it unnecessary to inquire into counsel's actual performance at trial, the court based its inference on the circumstances surrounding the representation of respondent, particularly (1) the time afforded for investigation and preparation, (2) the experience of counsel, (3) the gravity of the charge, (4) the complexity of possible defenses, and (5) the accessibility of witnesses to counsel.

Held: The Court of Appeals erred in utilizing an inferential approach in determining whether respondent's right to the effective assistance of counsel had been violated. Pp. 2043-2051.

(a) The right to the effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                    **Page 5**

meaningful adversarial testing.    When a true adversarial criminal trial has been conducted, the kind of testing envisioned by the Sixth Amendment has occurred. Pp. 2043-2046.

(b) Here, while the Court of Appeals purported to apply a standard of reasonable competence, it did not indicate that there had been an actual breakdown of the adversarial process during a trial. Instead, it concluded that the circumstances surrounding the representation of respondent mandated an inference that counsel was unable to discharge his duties. Only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial.    Pp. 2046-2049.

(c) The five criteria identified by the Court of Appeals as the circumstances surrounding respondent's representation warranting a finding of ineffective assistance of counsel, while relevant to an evaluation of a lawyer's[466 U.S. 649] effectiveness in a particular case, neither separately nor in combination provide a basis for concluding that competent counsel was not able to provide this respondent with the guiding hand that the Constitution guarantees. Pp. 2049-2051.

(d) This case is not one in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel. The criteria used by the Court of Appeals do not demonstrate that counsel failed to function in any meaningful sense as the Government's adversary. Respondent can make out a claim of ineffective assistance of counsel only by pointing to specific errors made by trial counsel. P. 2051.

675 F.2d 1126 (10th Cir.1982), reversed and remanded.

*Edwin S. Kneedler* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey,* and *John Fichter De Pue.*

*Steven Duke* by appointment of the Court, 462 U.S. 1128, argued the cause and filed a brief for respondent.*

* Briefs of *amici curiae* urging affirmance were filed for the National Association of Criminal Defense Lawyers et al. by *John J. Cleary;* and for the National Legal Aid and Defender Association et al. by *Richard J. Wilson, Charles S. Sims,* and *Burt Neuborne.*

Edwin S. Kneedler, Washington, D.C., for petitioner.

Steven B. Duke, New Haven, Conn., for respondent.

Justice STEVENS delivered the opinion of the Court.

Respondent and two associates were indicted on mail fraud charges involving the transfer of over $9,400,000 in checks between banks in Tampa, Fla., and Norman, Okla., during a 4-month period in 1975.    Shortly before the scheduled trial date, respondent's retained counsel withdrew. The court appointed a young lawyer with a real estate practice to represent respondent, but allowed him only 25 days for pretrial preparation, even though it had taken the Government over four and one-half years to investigate the case and it had reviewed thousands of documents during that investigation. The two codefendants agreed to testify for the Government; [466 U.S. 650] respondent was convicted on 11 of the 13 counts in the indictment and received a 25-year sentence.

*2042    The Court of Appeals reversed the conviction because it concluded that respondent did not "have the Assistance of Counsel for his defence" that is guaranteed by the Sixth Amendment to the Constitution.    (FN1) This conclusion was not supported by a determination that respondent's trial counsel had made any specified errors, that his actual performance had prejudiced the defense, or that he failed to exercise "the skill, judgment, and diligence of a reasonably competent defense attorney"; instead the conclusion rested on the premise that no such showing is necessary "when circumstances hamper a given lawyer's preparation of a defendant's case."    (FN2) The question presented by the Government's petition for certiorari is whether the Court of Appeals has correctly interpreted the Sixth Amendment.

1

© 2007 Thomson/West. No claim to original U.S. Govt. works.

The indictment alleged a "check kiting" scheme. (FN3) At the direction of respondent, his codefendant Cummings opened a bank account in the name of Skyproof Manufacturing, Inc. (Skyproof), at a bank in Tampa, Fla., and codefendant Merritt opened two accounts, one in his own name and one in the name of Skyproof, at banks in Norman, Okla. (FN4) Knowing that there were insufficient funds in either account, the defendants allegedly drew a series of checks and wire transfers on the Tampa account aggregating $4,841,073.95, all of which were deposited in Skyproof's Norman bank account during the period between June 23, 1975, and October 16, 1975; [466 U.S. 651] during approximately the same period they drew checks on Skyproof's Norman account for deposits in Tampa aggregating $4,600,881.39. The process of clearing the checks involved the use of the mails. By "kiting" insufficient funds checks between the banks in those two cities, defendants allegedly created false or inflated balances in the accounts. After outlining the overall scheme, Count I of the indictment alleged the mailing of two checks each for less than $1,000 early in May. Each of the additional 12 counts realleged the allegations in Count I except its reference to the two specific checks, and then added an allegation identifying other checks issued and mailed at later dates.

At trial the Government proved that Skyproof's checks were issued and deposited at the times and places, and in the amounts, described in the indictment. Having made plea bargains with defendants Cummings and Merritt, who had actually handled the issuance and delivery of the relevant written instruments, the Government proved through their testimony that respondent had conceived and directed the entire scheme, and that he had deliberately concealed his connection with Skyproof because of prior financial and tax problems.

After the District Court ruled that a prior conviction could be used to impeach his testimony, respondent decided not to testify. Counsel put on no defense. By cross-examination of Government witnesses, however, he established that Skyproof was not merely a sham, but actually was an operating company with a significant cash flow, though its revenues were not sufficient to justify as large a "float" as the record disclosed. Cross-examination also established the absence of written evidence that respondent had any control over

Skyproof, *2043 or personally participated in the withdrawals or deposits. (FN5)

[466 U.S. 652] The 4-day jury trial ended on July 17, 1980, and respondent was sentenced on August 28, 1980. His counsel perfected a timely appeal, which was docketed on September 11, 1980. Two months later respondent filed a motion to substitute a new attorney in the Court of Appeals, and also filed a motion in the District Court seeking to vacate his conviction on the ground that he had newly discovered evidence of perjury by officers of the Norman bank, and that the Government knew or should have known of that perjury. In that motion he also challenged the competence of his trial counsel. (FN6) The District Court refused to entertain the motion while the appeal was pending. The Court of Appeals denied the motion to substitute the attorney designated by respondent, but did appoint still another attorney to handle the appeal. Later it allowed respondent's motion to supplement the record with material critical of trial counsel's performance.

The Court of Appeals reversed the conviction because it inferred that respondent's constitutional right to the effective assistance of counsel had been violated. That inference was based on its use of five criteria: " '(1) [T] he time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel.' " 675 F.2d 1126, 1129 (CA10 1982) (quoting United States v. Golub, 638 F.2d 185, 189 (CA10 1980)). Under the test employed by the Court of Appeals, reversal is required even if [466 U.S. 653] the lawyer's actual performance was flawless. By utilizing this inferential approach, the Court of Appeals erred.

II

[1] An accused's right to be represented by counsel is a fundamental component of our criminal justice system. Lawyers in criminal cases "are necessities, not luxuries." (FN7) Their presence is essential because they are the means through which the other rights of the person on trial are secured. Without counsel, the right to a trial itself would be "of little avail," (FN8) as [466 U.S. 654] this Court *2044 has recognized repeatedly. (FN9) "Of all the rights that an accused person has, the right to be

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                                      Page 7

represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." (FN10)

[2] The special value of the right to the assistance of counsel explains why "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). The text of the Sixth Amendment itself suggests as much. The Amendment requires not merely the provision of counsel to the accused, but "Assistance," which is to be "for his defence." Thus, "the core purpose of the counsel guarantee was to assure 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor." United States v. Ash, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973). If no actual "Assistance" "for" the accused's "defence" is provided, then the constitutional guarantee has been violated. (FN11) To hold otherwise

"could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of [466 U.S. 655] assistance of counsel cannot be satisfied by mere formal appointment." Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940) (footnote omitted).

Thus, in McMann the Court indicated that the accused is entitled to "a reasonably competent attorney," 397 U.S., at 770, 90 S.Ct., at 1448, whose advice is "within the range of competence demanded of attorneys in criminal cases." Id., at 771, 90 S.Ct., at 1449. (FN12) In Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), we held that the Constitution guarantees an accused "adequate legal assistance." Id., at 344, 100 S.Ct., at 1716. And in Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court referred to the criminal defendant's constitutional guarantee of "a fair trial and a competent attorney." Id., at 134, 102 S.Ct., at 1575.

The substance of the Constitution's guarantee of the effective assistance of counsel is illuminated by

reference to its underlying purpose. "[T]ruth," Lord Eldon said, "is best discovered by powerful statements *2045 on both sides of the question." (FN13) This dictum describes the unique strength of our system of criminal justice. "The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." Herring v. New York, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975). (FN14) It is that "very premise" that underlies and gives meaning to the Sixth [466 U.S. 656] Amendment. (FN15) It "is meant to assure fairness in the adversary criminal process." United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 667, 66 L.Ed.2d 564 (1981). Unless the accused receives the effective assistance of counsel, "a serious risk of injustice infects the trial itself." Cuyler v. Sullivan, 446 U.S., at 343, 100 S.Ct., at 1715. (FN16)

[3][4][5][6][7][8][9] Thus, the adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." Anders v. California, 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967). (FN17) The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted--even if defense counsel may have made demonstrable errors (FN18)--the kind of testing envisioned by the Sixth Amendment has occurred. (FN19) But if the process loses. *2046 [466 U.S. 657] its character as a confrontation between adversaries, the constitutional guarantee is violated. (FN20) As Judge Wyzanski has written: "While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators." United States ex rel. Williams v. Twomey, 510 F.2d 634, 640 (CA7), cert. denied sub nom. Sielaff v. Williams, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). (FN21)

III

While the Court of Appeals purported to apply a standard of reasonable competence, it did not indicate that there had been an actual breakdown of the adversarial process during [466 U.S. 658] the 

© 2007 Thomson/West. No claim to original U.S. Govt. works.

trial of this case. Instead it concluded that the circumstances surrounding the representation of respondent mandated an inference that counsel was unable to discharge his duties.

[10][11] In our evaluation of that conclusion, we begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. See United States v. Valenzuela-Bernal, 458 U.S. 858, 867-869, 102 S.Ct. 3440, 3446-3447, 73 L.Ed.2d 1193 (1982); United States v. Morrison, 449 U.S., at 364-365, 101 S.Ct., at 667-668; Weatherford v. Bursey, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). (FN22) Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, see Michel v. Louisiana, 350 U.S. 91, 100-101, 76 S.Ct. 158, 163-164, 100 L.Ed. 83 (1955), the burden rests on the accused to demonstrate a constitutional violation. (FN23) There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. (FN24)

*2047 [12][13] [466 U.S. 659] Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. (FN25) Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice was required in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), because the petitioner had been "denied the right of effective cross-examination" which "'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" Id., at 318, 94 S.Ct., at 1111 (citing Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968), and Brookhart v. Janis, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966)). (FN26)

Circumstances of that magnitude may be present

on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a [466 U.S. 660] fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), was such a case.

The defendants had been indicted for a highly publicized capital offense. Six days before trial, the trial judge appointed "all the members of the bar" for purposes of arraignment. "Whether they would represent the defendants thereafter if no counsel appeared in their behalf, was a matter of speculation only, or, as the judge indicated, of mere anticipation on the part of the court." Id., 287 U.S., at 56, 53 S.Ct., at 59. On the day of trial, a lawyer from Tennessee appeared on behalf of persons "interested" in the defendants, but stated that he had not had an opportunity to prepare the case or to familiarize himself with local procedure, and therefore was unwilling to represent the defendants on such short notice. The problem was resolved when the court decided that the Tennessee lawyer would represent the defendants, with whatever help the local bar could provide.

"The defendants, young, ignorant, illiterate, surrounded by hostile sentiment, haled back and forth under guard of soldiers, charged with an atrocious crime regarded with especial horror in the community where they were to be tried, were thus put in peril of their lives within a *2048 few moments after counsel for the first time charged with any degree of responsibility began to represent them." Id., at 57-58, 53 S.Ct., at 60.

This Court held that "such designation of counsel as was attempted was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard." Id., at 53, 53 S.Ct., at 58. The Court did not examine the actual performance of counsel at trial, but instead concluded that under these circumstances the likelihood that counsel could have performed as an effective adversary was so remote[466 U.S. 661] as to have made the trial inherently unfair. (FN27) Powell was thus a case in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                    **Page 9**

ineffectiveness was properly presumed without inquiry into actual performance at trial. (FN28)

[14][15] But every refusal to postpone a criminal trial will not give rise to such a presumption. In Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940), counsel was appointed in a capital case only three days before trial, and the trial court denied counsel's request for additional time to prepare. Nevertheless, the Court held that since evidence and witnesses were easily accessible to defense counsel, the circumstances did not make it unreasonable to expect that counsel could adequately prepare for trial during that period of time, id., at 450-453, 60 S.Ct., at 324-325. (FN29) Similarly, in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court refused "to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel." id., at 54, 90 S.Ct., at 1982. (FN30) [466 U.S. 662] Thus, only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial. (FN31)

*2049 The Court of Appeals did not find that respondent was denied the presence of counsel at a critical stage of the prosecution. Nor did it find, based on the actual conduct of the trial, that there was a breakdown in the adversarial process that would justify a presumption that respondent's conviction was insufficiently reliable to satisfy the Constitution. The dispositive question in this case therefore is whether the circumstances surrounding respondent's representation--and in particular the five criteria identified by the Court of Appeals-- justified such a presumption. (FN32)

[466 U.S. 663]
IV

[16] The five factors listed in the Court of Appeals' opinion are relevant to an evaluation of a lawyer's effectiveness in a particular case, but neither separately nor in combination do they provide a basis for concluding that competent counsel was not able to provide this respondent with the guiding hand that the Constitution guarantees.

Respondent places special stress on the disparity between the duration of the Government's

investigation and the period the District Court allowed to newly appointed counsel for trial preparation. The lawyer was appointed to represent respondent on June 12, 1980, and on June 19, filed a written motion for a continuance of the trial that was then scheduled to begin on June 30. Although counsel contended that he needed at least 30 days for preparation, the District Court reset the trial for July 14--thus allowing 25 additional days for preparation.

Neither the period of time that the Government spent investigating the case, nor the number of documents that its agents reviewed during that investigation, is necessarily relevant to the question whether a competent lawyer could prepare to defend the case in 25 days. The Government's task of finding and assembling admissible evidence that will carry its burden of proving guilt beyond a reasonable doubt is entirely different from the defendant's task in preparing to deny or rebut a criminal charge. Of course, in some cases the rebuttal may be equally burdensome and time consuming, but there is no necessary correlation between the two. In this case, the time devoted by the Government to the assembly, organization, and summarization of the thousands of written records evidencing the two streams of checks flowing between the banks in Florida and Oklahoma unquestionably simplified the work of defense counsel in identifying and understanding[466 U.S. 664] the basic character of the defendants' scheme. (FN33) When a series of repetitious transactions fit into a single mold, the number of written exhibits that are needed to define the pattern may be unrelated to the time that is needed to understand it.

The significance of counsel's preparation time is further reduced by the nature of the charges against respondent. Most of the Government's case consisted merely of establishing the transactions between the two banks. A competent attorney would have no reason to question the authenticity, accuracy, or relevance of this evidence--there could be no dispute that these *2050 transactions actually occurred. (FN34) As respondent appears to recognize, (FN35) the only bona fide jury issue open to competent defense counsel on these facts was whether respondent acted with intent to defraud. (FN36) When [466 U.S. 665] there is no reason to dispute the underlying historical facts, the period of 25 days to consider the question whether those facts

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                    **Page 10**

justify an inference of criminal intent is not so short that it even arguably justifies a presumption that no lawyer could provide the respondent with the effective assistance of counsel required by the Constitution. (FN37)

[17] That conclusion is not undermined by the fact that respondent's lawyer was young, that his principal practice was in real estate, or that this was his first jury trial. Every experienced criminal defense attorney once tried his first criminal case. Moreover, a lawyer's experience with real estate transactions might be more useful in preparing to try a criminal case involving financial transactions than would prior experience in handling, for example, armed robbery prosecutions. The character of a particular lawyer's experience may shed light in an evaluation of his actual performance, but it does not justify a presumption of ineffectiveness in the absence of such an evaluation. (FN38)

[18] [466 U.S. 666] The three other criteria--the gravity of the charge, the complexity of the case, and the accessibility of witnesses (FN39)--are all matters that may affect what a reasonably competent attorney could be expected to have done under the circumstances, but none identifies circumstances that in themselves make it unlikely that respondent received the effective assistance of counsel. (FN40)

*2051. V

[19][20] This case is not one in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel. The criteria used by the Court of Appeals do not demonstrate that counsel failed to function in any meaningful sense as the Government's adversary. Respondent can therefore make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel. (FN41) In this Court, respondent's present counsel argues that the record would support such an attack, but we leave that claim--as well as the other alleged trial errors raised by respondent which were not passed upon [466 U.S. 667] by the Court of Appeals--for the consideration of the Court of Appeals on remand. (FN42)

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

Justice MARSHALL concurs in the judgment.

(FNA1.) The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 287, 50 L.Ed. 499.

(FN1.) The Sixth Amendment provides, in pertinent part:

"In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence."

(FN2.) 675 F.2d 1126, 1128 (CA10 1982).

(FN3.) See Williams v. United States, 458 U.S. 279, 280-282, and n. 1, 102 S.Ct. 3088, 3089-3090, 73 L.Ed.2d 767 (1982).

(FN4.) Skyproof, according to the indictment, was largely a facade and pretense to permit the withdrawal of large sums of money from these banks.

(FN5.) A good deal of evidence concerned the efforts of the Norman bank to recoup its losses, and also the efforts of respondent to make restitution. The bank took over a local bottling company in Texas that had been acquired by Skyproof while the scheme was in operation, and respondent apparently offered to make the bank whole with funds to be supplied by a rich aunt. That evidence did not provide respondent with much of a defense to the mail fraud charges, but was considered relevant to sentencing by the District Court.

(FN6.) During trial, in response to questions from the bench, respondent expressed his satisfaction with counsel's performance. However, in his motion for new trial, respondent attacked counsel's performance and explained his prior

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                    **Page 11**

praise of counsel through an affidavit of a psychologist who indicated that he had advised respondent to praise trial counsel in order to ameliorate the lawyer's apparent lack of self-confidence.

(FN7.) "That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries. The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law." Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963).

(FN8.) Time has not eroded the force of Justice Sutherland's opinion for the Court in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932):

"The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and

appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." Id., at 68-69, 53 S.Ct., at 63-64.

*2051  (FN9.) See United States v. Ash, 413 U.S. 300, 307-308, 93 S.Ct. 2568, 2572-2573, 37 L.Ed.2d 619 (1973); Argersinger v. Hamlin, 407 U.S. 25, 31-32, 92 S.Ct. 2006, 2009-2010, 32 L.Ed.2d 530 (1972); Gideon v. Wainwright, 372 U.S., at 343-345, 83 S.Ct., at 796-797; Johnson v. Zerbst, 304 U.S. 458, 462-463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938); Powell v. Alabama, 287 U.S., at 68-69, 53 S.Ct., at 63-64.

(FN10.) Schaefer, Federalism and State Criminal Procedure, 70 Harv.L.Rev. 1, 8 (1956).

(FN11.) "The Sixth Amendment, however, guarantees more than the appointment of competent counsel. By its terms, one has a right to 'Assistance of Counsel [for] his defence.' Assistance begins with the appointment of counsel, it does not end there. In some cases the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided. Clearly, in such cases, the defendant's Sixth Amendment right to 'have Assistance of Counsel' is denied." United States v. Decoster, 199 U.S.App.D.C. 359, 382, 624 F.2d 196, 219 (MacKinnon, J., concurring), cert. denied, 444 U.S. 944, 100 S.Ct. 302, 62 L.Ed.2d 311 (1979).

(FN12.) See also Wainwright v. Sykes, 433 U.S. 72, 99, 97 S.Ct. 2497, 2512, 53 L.Ed.2d 594 (1977) (WHITE, J., concurring in judgment); id., at 117-118, 97 S.Ct., at 2522-2523 (BRENNAN, J., dissenting); Tollett v. Henderson, 411 U.S. 258, 266-268, 93 S.Ct. 1602, 1607-1608, 36 L.Ed.2d 235 (1973); Parker v. North Carolina, 397 U.S. 790, 797-798, 90 S.Ct. 1458, 1462-1463, 25 L.Ed.2d 785 (1970).

(FN13.) Quoted in Kaufman, Does the Judge Have a Right to Qualified Counsel?, 61 A.B.A.J. 569, 569 (1975).

(FN14.) See also Polk County v. Dodson, 454 U.S. 312, 318, 102 S.Ct. 445, 449, 70 L.Ed.2d 509 (1981) ("The system assumes that adversarial testing will ultimately advance the public interest

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                                    **Page 12**

in truth and fairness"); Gardner v. Florida, 430 U.S. 349, 360, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977) (plurality opinion) ("Our belief that debate between adversaries is often essential to the truth-seeking function of trials requires us also to recognize the importance of giving counsel an opportunity to comment on facts which may influence the sentencing decision in capital cases").

(FN15.) "More specifically, the right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process that has been constitutionalized in the Sixth and Fourteenth Amendments." 422 U.S., at 857, 95 S.Ct., at 2553.

(FN16.) "Whether a man is innocent cannot be determined from a trial in which, as here, denial of counsel has made it impossible to conclude, with any satisfactory degree of certainty, that the defendant's case was adequately presented." Betts v. Brady, 316 U.S. 455, 476, 62 S.Ct. 1252, 1263, 86 L.Ed. 1595 (1942) (Black, J., dissenting).

(FN17.) See also Jones v. Barnes, 463 U.S. 745, 758, 103 S.Ct. 3308, 3316, 77 L.Ed.2d 987 (1983) (BRENNAN, J., dissenting) ("To satisfy the Constitution, counsel must function as an advocate for the defendant, as opposed to a friend of the court"); Ferri v. Ackerman, 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979) ("Indeed, an indispensable element of the effective performance of [defense counsel's] responsibilities is the ability to act independently of the Government and to oppose it in adversary litigation").

(FN18.) See Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982); United States v. Agurs, 427 U.S. 97, 102, n. 5, 96 S.Ct. 2392, 2396, 49 L.Ed.2d 342 (1976); Tollett v. Henderson, 411 U.S., at 267, 93 S.Ct., at 1608; Parker v. North Carolina, 397 U.S., at 797-798, 90 S.Ct., at 1462, 1463; McMann v. Richardson, 397 U.S. 759, 770-771, 90 S.Ct. 1441, 1448-1449, 25 L.Ed.2d 763 (1970); Brady v. United States, 397 U.S. 742,

756-757, 90 S.Ct. 1463, 1473-1474, 25 L.Ed.2d 747 (1970).

**\*2051** (FN19.) Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade. See Nickols v. Gagnon, 454 F.2d 467, 472 (CA7 1971), cert. denied, 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 336 (1972). At the same time, even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt. And, of course, even when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances. See Tollett v. Henderson, 411 U.S., at 266-268, 93 S.Ct., at 1607-1608; Parker v. North Carolina, 397 U.S., at 797-798, 90 S.Ct., at 1462-1463; McMann, 397 U.S., at 770-771, 90 S.Ct., at 1448-1449. See generally Bordenkircher v. Hayes, 434 U.S. 357, 363-365, 98 S.Ct. 663, 667-669, 54 L.Ed.2d 604 (1978); North Carolina v. Alford, 400 U.S. 25, 37-38, 91 S.Ct. 160, 167-168, 27 L.Ed.2d 162 (1970); Brady v. United States, 397 U.S., at 750-752, 90 S.Ct., at 1469-1471.

(FN20.) The Court of Appeals focused on counsel's overall representation of respondent, as opposed to any specific error or omission counsel may have made. Of course, the type of breakdown in the adversarial process that implicates the Sixth Amendment is not limited to counsel's performance as a whole—specific errors and omissions may be the focus of a claim of ineffective assistance as well. See Strickland v. Washington, 466 U.S. 668, 693-696, 104 S.Ct. 2052, 2067-2069, 80 L.Ed.2d 674. Since this type of claim was not passed upon by the Court of Appeals, we do not consider it here.

(FN21.) Thus, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. If counsel is a reasonably effective advocate, he meets constitutional standards irrespective of his client's evaluation of his performance. See Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)                    **Page 13**

L.Ed.2d 987 (1983); Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). It is for this reason that we attach no weight to either respondent's expression of satisfaction with counsel's performance at the time of his trial, or to his later expression of dissatisfaction. See n. 6, supra.

(FN22.) Cf. United States v. Agurs, 427 U.S., at 112, 96 S.Ct., at 2401 (footnote omitted) ("The proper standard of materiality [of a prosecutor's failure to disclose exculpatory evidence] must reflect our overriding concern with the justice of the finding of guilt"). Thus, we do not view counsel's performance in the abstract, but rather the impact of counsel's performance upon "what, after all, is [the accused's], not counsel's trial." McKaskle v. Wiggins, 465 U.S. 168, 174, 104 S.Ct. 944, 949, 79 L.Ed.2d 122 (1984).

(FN23.) "Whenever we are asked to consider a charge that counsel has failed to discharge his professional responsibilities, we start with a presumption that he was conscious of his duties to his clients and that he sought conscientiously to discharge those duties. The burden of demonstrating the contrary is on his former clients." Matthews v. United States, 518 F.2d 1245, 1246 (CA7 1975).

(FN24.) See, e.g., Flanagan v. United States, 465 U.S. 259, 267-268, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984); Estelle v. Williams, 425 U.S. 501, 504, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976); Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Bruton v. United States, 391 U.S. 123, 136-137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968); Sheppard v. Maxwell, 384 U.S. 333, 351-352, 86 S.Ct. 1507, 1516-1517, 16 L.Ed.2d 600 (1966); Jackson v. Denno, 378 U.S. 368, 389-391, 84 S.Ct. 1774, 1787-1788, 12 L.Ed.2d 908 (1964); Payne v. Arkansas, 356 U.S. 560, 567-568, 78 S.Ct. 844, 849-850, 2 L.Ed.2d 975 (1958); In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

*2051   (FN25.) The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. See, e.g., Geders

v. United States, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); Brooks v. Tennessee, 406 U.S. 605, 612-613, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972); Hamilton v. Alabama, 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961); White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 1051, 10 L.Ed.2d 193 (1963) (per curiam); Ferguson v. Georgia, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961); Williams v. Kaiser, 323 U.S. 471, 475-476, 65 S.Ct. 363, 366, 89 L.Ed. 398 (1945)

(FN26.) Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt. See Strickland v. Washington, 466 U.S., at 693-696, 104 S.Ct., at 2067-2069; see generally Davis v. Alabama, 596 F.2d 1214, 1221-1223 (CA5 1979), vacated as moot, 446 U.S. 903 (1980); Cooper v. Fitzharris, 586 F.2d 1325, 1332-1333 (CA9 1978) (en banc); McQueen v. Swenson, 498 F.2d 207, 219-220 (CA8 1974); United States ex rel. Green v. Rundle, 434 F.2d 1112, 1115 (CA3 1970); Bines, Remedying Ineffective Representation in Criminal Cases: Departures from Habeas Corpus, 59 Va.L.Rev. 927 (1973); Note, Ineffective Representation as a Basis for Relief from Conviction: Principles for Appellate Review, 13 Colum.J.Law & Social Prob. 1, 76-80 (1977).

(FN27.) "It is not enough to assume that counsel thus precipitated into the case thought there was no defense, and exercised their best judgment in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thoroughgoing investigation might disclose as to the facts. No attempt was made to investigate. No opportunity to do so was given. Defendants were immediately hurried to trial.... Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense. To decide otherwise, would simply be to ignore actualities." 287 U.S., at 58, 53 S.Ct. at 60.

(FN28.) See also Chambers v. Maroney, 399 U.S. 42, 59, 90 S.Ct., at 1985 (1970) (Harlan, J.,

© 2007 Thomson/West. No claim to original U.S. Govt. works.

concurring in part and dissenting in part); White v. Ragen, 324 U.S. 760, 764, 65 S.Ct. 978, 89 L.Ed. 1348 (1945) (per curiam); House v. Mayo, 324 U.S. 42, 45, 65 S.Ct. 517, 519, 89 L.Ed. 739 (1945) (per curiam); Ex parte Hawk, 321 U.S. 114, 115-116, 64 S.Ct. 448, 449-450, 88 L.Ed. 572 (1944) (per curiam). Ineffectiveness is also presumed when counsel "actively represented conflicting interests." Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). See Flanagan v. United States, 465 U.S., at 268, 104 S.Ct., at 1054. "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." Holloway v. Arkansas, 435 U.S. 475, 489-490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978). See also Glasser v. United States, 315 U.S. 60, 67-77, 62 S.Ct. 457, 463-464, 86 L.Ed. 680 (1942).

(FN29.) See also Morris v. Slappy, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983).

(FN30.) See also Mancusi v. Stubbs, 408 U.S. 204, 214, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972)

(FN31.) The Government suggests that a presumption of prejudice is justified when counsel is subject to "external constraints" on his performance. In this case the Court of Appeals identified an "external" constraint—the District Court's decision to give counsel only 25 days to prepare for trial. The fact that the accused can attribute a deficiency in his representation to a source external to trial counsel does not make it any more or less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect. Cf. United States v. Agurs, 427 U.S., at 110, 96 S.Ct., at 2400 (prosecutorial misconduct should be evaluated not on the basis of culpability but by its effect on the fairness of the trial). That is made clear by Chambers and Avery. Both cases involved "external constraints" on counsel in the form of court-imposed limitations on the length of pretrial preparation, yet in neither did the Court presume that the "constraint" had an effect on the fairness of the trial. In fact, only last Term we made it clear that with respect to a trial court's refusal to grant the

defense additional time to prepare for trial, an "external constraint" on counsel, great deference must be shown to trial courts, because of the scheduling problems they face. See Morris v. Slappy, 461 U.S., at 11-12, 103 S.Ct., at 1616. Conversely, we have presumed prejudice when counsel labors under an actual conflict of interest, despite the fact that the constraints on counsel in that context are entirely self-imposed. See Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

*2051_  (FN32.) See generally Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L.Rev. 299, 346-349 (1983); Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Colum.L.Rev. 1053, 1066-1068 (1980); Note, Ineffective Assistance of Counsel: The Lingering Debate, 65 Cornell L.Rev. 659, 681-688 (1980).

(FN33.) It is noteworthy that only about 60 exhibits, consisting primarily of bank records and batches of checks, together with summary charts prepared by the Government, were actually introduced at trial.

(FN34.) None of the several lawyers who have represented respondent, including present counsel who has had months to study the record, has suggested that there was any reason to challenge the authenticity, relevance, or reliability of the Government's evidence concerning the transactions at issue.

(FN35.) See Brief for Respondent 56-61.

(FN36.) The mail fraud statute, under which respondent was convicted, provides:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or

© 2007 Thomson/West. No claim to original U.S. Govt. works.

authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both." 18 U.S.C. § 1341.

(FN37.) It is instructive to compare this case to Powell, where not only was there in reality no appointment of counsel until the day of trial, but also there was substantial dispute over the underlying historical facts. This case is more like Avery and Chambers than Powell.

(FN38.) We consider in this case only the commands of the Constitution. We do not pass on the wisdom or propriety of appointing inexperienced counsel in a case such as this. It is entirely possible that many courts should exercise their supervisory powers to take greater precautions to ensure that counsel in serious criminal cases are qualified. See generally, e.g., Committee to Consider Standards for Admission to Practice in Federal Courts, Final Report, 83 F.R.D. 215 (1979); Bazelon, The Defective Assistance of Counsel, 42 U.Cin.L.Rev. 1, 18-19 (1973); Burger, The Special Skills of Advocacy: Are Specialized Training and Certification of Advocates Essential to Our System of Justice?, 42 Ford.L.Rev. 227 (1973); Burger, Some Further Reflections on the Problem of Adequacy of Trial Counsel, 49 Ford.L.Rev. 1 (1980); Schwarzer, Dealing with Incompetent Counsel -The Trial Judge's Role, 93 Harv.L.Rev. 633 (1980). We address not what is prudent or appropriate, but only what is constitutionally compelled.

(FN39.) In this connection, it is worth noting that most of the proof not located in the district in which respondent was tried concerned the largely undisputed historical facts underlying the transactions at issue.

(FN40.) In his brief, respondent goes beyond the factors enumerated by the Court of Appeals in arguing that he did not receive the effective assistance of counsel at trial. For example, respondent points out that trial counsel used notes

to assist him during his opening statement to the jury and told the jury it was his first trial. None of these aspects of counsel's representation is so inherently inconsistent with a reasonably effective defense as to justify a presumption that respondent's trial was unfair; indeed they could have been the product of a reasonable tactical judgment.

(FN41.) Since counsel's overall performance was the only question on which the Court of Appeals passed, and is the primary focus of respondent's arguments in this court, we have confined our analysis to a claim challenging counsel's overall performance, and not one based on particular errors or omissions. Should respondent pursue claims based on specified errors made by counsel on remand, they should be evaluated under the standards enunciated in Strickland v. Washington, 466 U.S., at 693-696, 104 S.Ct., at 2067-2069.

*2051_  (FN42.) The Government argues that a defendant can attack the actual performance of trial counsel only through a petition for postconviction relief under 28 U.S.C. § 2255, and not through direct appeal, because ineffective assistance claims are generally not properly raised in the District Court nor preserved for review on appeal. Whatever the merits of this position as a general matter, in this case respondent did raise his claim in the District Court through his motion for new trial under Federal Rule of Criminal Procedure 33. The District Court denied that motion for lack of jurisdiction because the case was pending on direct appeal at the time, but that ruling was erroneous. The District Court had jurisdiction to entertain the motion and either deny the motion on its merits, or certify its intention to grant the motion to the Court of Appeals, which could then entertain a motion to remand the case. See United States v. Fuentes-Lozano, 580 F.2d 724 (CA5 1978); United States v. Phillips, 558 F.2d 363 (CA6 1977) (per curiam); United States v. Ellison, 557 F.2d 128, 132 (CA7), cert. denied, 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 450 (1977); United States v. Hays, 454 F.2d 274, 275 (CA9 1972); United States v. Smith, 433 F.2d 149, 151-152 (CA5); United States v. Lee, 428 F.2d 917, 923 (CA6), cert. denied, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972); Guam v. Inglett, 417 F.2d 123, 125 (CA9 1969); United States v. Hersh,

© 2007 Thomson/West. No claim to original U.S. Govt. works.

104 S.Ct. 2039, 466 U.S. 648, U.S. v. Cronic, (U.S.Okla. 1984)

415 F.2d 835, 837 (CA5 1969); Richardson v. United States, 360 F.2d 366, 368-369 (CA5 1966); United States v. Comulada, 340 F.2d 449, 452 (CA2), cert. denied, 380 U.S. 978, 85 S.Ct. 1343, 14 L.Ed.2d 272 (1965); Ferina v. United States, 302 F.2d 95, 107, n. 1 (CA8 1962); Smith v. United States, 109 U.S.App.D.C. 28, 31-32, 283 F.2d 607, 610-611 (1960) (Bazelon, J., concurring in result), cert. denied, 364 U.S. 938, 81 S.Ct. 387, 5 L.Ed.2d 369 (1961); Zamloch v. United States, 187 F.2d 854, later proceeding, 193 F.2d 889 (CA9 1951) (per curiam), later proceeding, 193 F.2d 889, cert. denied, 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342 (1952); Rakes v. United States, 163 F.2d 771, 772-773 (CA4 1947) (per curiam), later proceeding, 169 F.2d 739, cert. denied, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380 (1948); 8A J. Moore, Moore's Federal Practice ¶ 33.03[2] (1983); 3 C. Wright, Federal Practice and Procedure§ 557, pp. 338-340 (2d ed. 1982). See also United States v. Johnson, 327 U.S. 106, 109-110, 66 S.Ct. 464, 465, 90 L.Ed. 562 (1946). The Court of Appeals did not reach this claim of actual ineffectiveness, since it reversed the conviction without considering counsel's actual performance. Accordingly this claim remains open on remand.

© 2007 Thomson/West. No claim to original U.S. Govt. works.

# EXHIBIT COVER PAGE



EXHIBIT

Description of this Exhibit:

U.S. Supreme courts ruling
in curtis.

Number of pages to this Exhibit ___12___ pages.

JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [x] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury

*Requesting required testimony and conduct of counsel*

tation/Title
742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

**\*1070   742 F.2d 1070**

United States Court of Appeals,
Seventh Circuit.

UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Earl CURTIS, Defendant-Appellant.

**No. 83-2351.**
Submitted June 7, 1984. (FN*)

Decided Aug. 28, 1984.

As Amended Sept. 18, 1984.

   Defendant appealed from a judgment of the United States District Court for
the Eastern District of Illinois, Harold Albert Baker, J., which denied his
motion to vacate his conviction of bank robbery.  The Court of Appeals held
that:  (1) defendant failed to establish that his counsel's decision not to
attempt to impeach prosecution witness with a car repair receipt, which
counsel believed had been fabricated, did not constitute sound trial
strategy and therefore counsel's failure to impeach the witness could not
form basis for finding of ineffective assistance of counsel, and (2) where
it was apparent that defendant would have testified perjuriously, defense
counsel's refusal to put him on the witness stand did not violate
defendant's constitutional rights.

   Affirmed.

West Headnotes

[1]  Criminal Law ☞641.13(1)

   110 ----
      110XX Trial
         110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
               110k641.13(1) In General.

   A convicted defendant alleging ineffective assistance of counsel must show
that counsel's performance fell below an "objective standard of
reasonableness;" specifically, defendant must identify the acts or omissions

© 2005 Thomson/West. No claim to original U.S. Govt. works.

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

of counsel that are alleged not to have been result of reasonable
professional judgment.  U.S.C.A. Const.Amend. 6.

[2]   Criminal Law ☞641.13(1)

    110 ----
      110XX Trial
        110XX(B) Course and Conduct of Trial in General
        110k641 Counsel for Accused
          110k641.13 Adequacy of Representation
            110k641.13(1) In General.

  In reviewing a claim of ineffective assistance of counsel, court must
assess whether in light of all circumstances, acts or omissions alleged not
to have been result of reasonable professional judgment fell outside wide
range of professionally competent assistance and then make an assessment of
prejudice resulting from the specified deficiencies in counsel's
performance;  question is whether there is a reasonable probability that,
absent errors, fact finder would have had a reasonable doubt respecting
guilt.  U.S.C.A. Const.Amend. 6.

[3]   Criminal Law ☞641.13(6)

    110 ----
      110XX Trial
        110XX(B) Course and Conduct of Trial in General
        110k641 Counsel for Accused
          110k641.13 Adequacy of Representation
            110k641.13(2) Particular Cases and Problems
              110k641.13(6) Evidence; Procurement, Presentation and
                Objections.

  Tactical decision not to call a particular witness or seek to introduce a
particular piece of evidence, if made after adequate investigation and based
upon counsel's reasonable determination that damage to his client's case can
thereby be avoided, cannot form basis for finding of ineffective assistance
of counsel.  U.S.C.A. Const.Amend. 6.

[4]   Criminal Law ☞641.13(6)

    110 ----
      110XX Trial
        110XX(B) Course and Conduct of Trial in General
        110k641 Counsel for Accused
          110k641.13 Adequacy of Representation
            110k641.13(2) Particular Cases and Problems
              110k641.13(6) Evidence; Procurement, Presentation and

© 2005 Thomson/West. No claim to original U.S. Govt. works.

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

Objections.

Defendant failed to establish that his counsel's decision not to attempt to impeach prosecution witness with a car repair receipt, which counsel believed had been fabricated, did not constitute sound trial strategy and therefore counsel's failure to impeach the witness could not form basis for finding of ineffective assistance of counsel.  U.S.C.A. Const.Amend. 6.

[5]  Criminal Law ☞641.13(6)

110 ----
    110XX Trial
        110XX(B) Course and Conduct of Trial in General
        110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
                110k641.13(2) Particular Cases and Problems
                    110k641.13(6) Evidence; Procurement, Presentation and Objections.

Defense counsel's failure to call certain witnesses to testify as to the stormy relationship between defendant and key prosecution witness did not constitute ineffective assistance of counsel, particularly in light of fact that those witnesses' interests and biases in favor of defendant were readily apparent.  U.S.C.A. Const.Amend. 6.

[6]  Criminal Law ☞641.13(6)

110 ----
    110XX Trial
        110XX(B) Course and Conduct of Trial in General
        110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
                110k641.13(2) Particular Cases and Problems
                    110k641.13(6) Evidence; Procurement, Presentation and Objections.

[See headnote text below]

[6]  Witnesses ☞88

410 ----
    410II Competency
        410II(B) Parties and Persons Interested in Event
        410k87 Defendants in Criminal Prosecutions
            410k88 In General.

Where it was apparent that defendant would have testified perjuriously,

© 2005 Thomson/West. No claim to original U.S. Govt. works.

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

defense counsel's refusal to put him on the witness stand did not violate defendant's constitutional rights.

[7]  Constitutional Law ⚖43(1)

   92 ----
      92II Construction, Operation, and Enforcement of Constitutional
      Provisions
         92k41 Persons Entitled to Raise Constitutional Questions
            92k43 Estoppel or Waiver
               92k43(1) In General.

   Certain constitutional rights are so fundamental that they are deemed
personal to a defendant and he alone may decide whether those rights will be
exercised or waived and they include:  decision whether to plead guilty or
to proceed to trial, decision whether to be tried by judge or jury, decision
whether to appeal and whether to forego assistance of counsel.

[8]  Witnesses ⚖88

   410 ----
      410II Competency
         410II(B) Parties and Persons Interested in Event
            410k87 Defendants in Criminal Prosecutions
               410k88 In General.

   When a defendant asserts that he desires to exercise his constitutional
right to testify truthfully, counsel's duty is to inform defendant why he
believes that course would be unwise or dangerous and if a defendant insists
on testifying, however irrational that insistence might be from a tactical
viewpoint, counsel must accede;  defendant's personal constitutional right
to testify truthfully in his own behalf may not be waived by counsel as a
matter of trial strategy.

[9]  Witnesses ⚖88

   410 ----
      410II Competency
         410II(B) Parties and Persons Interested in Event
            410k87 Defendants in Criminal Prosecutions
               410k88 In General.

   A defendant has no constitutional right to testify perjuriously in his own
behalf.

   *1072  Robert C. Babione, Babione, Edwards & Putzel, St. Louis, Mo., for
defendant-appellant.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

David E. Risley, Asst. U.S. Atty., Danville, Ill., for plaintiff-appellee.

Before WOOD, CUDAHY and COFFEY, Circuit Judges.

PER CURIAM.

Defendant-appellant Curtis appeals from a final judgment of the district court denying his motion to vacate his conviction of bank robbery. 28 U.S.C. § 2255. The motion, filed on March 4, 1980, originally was summarily dismissed. Curtis appealed. This court, in an unpublished order dated March 1, 1982, reversed and remanded the case for an evidentiary hearing on Curtis ineffective assistance of counsel claim. On the basis of the evidence adduced at that hearing, the district court concluded that trial counsel's representation was competent and effective.

I

Curtis was convicted of bank robbery largely on the testimony of Harris, co-defendant turned government star witness. Harris placed both Curtis and his car at the "switch site," where an exchange of cars was to take place following the robbery.

In his section 2255 motion, Curtis alleged that the following acts and omissions by counsel constituted ineffective assistance: (1) counsel failed to investigate Curtis' alibi defense; (2) counsel failed to present witnesses or evidence at trial to impeach Harris' testimony; and (3) counsel refused to permit Curtis to testify despite Curtis' clearly expressed desire to do so.

Both Curtis and his trial counsel, Isaiah Gant, testified at the evidentiary hearing. Gant's testimony may be summarized as follows. In initial interviews with Curtis at the jail, Curtis had denied involvement in the bank robbery, had provided Gant with a list of alibi witnesses, and had informed Gant of a repair receipt which would establish that his car was in a repair shop in Chicago at the time of the robbery in St. Anne. Subsequently, Curtis' two other co-defendants, who were released on bond, sought out Gant and informed him that Curtis and his car were involved in the robbery. When Gant confronted Curtis with this information, Curtis admitted to Gant that he had participated in the robbery. Despite that admission, Curtis insisted that Gant should seek to introduce the repair receipt into evidence at trial, stating that the shop mechanic would testify on his behalf. Gant's determination not to attempt to introduce the repair receipt, which he believed to be bogus based on his conversations with Curtis' co-defendants, was strengthened when he saw the mechanic at the courthouse prior to trial, and learned that he had been speaking with the prosecutor and had been subpoenaed by the government as a witness. When Gant asked the mechanic whether he would testify on behalf of Curtis, the

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 6

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

mechanic responded that he did not want to get involved.  Gant then informed Curtis that any attempt to introduce the repair receipt would be a crucial mistake.

   *1073  Gant stated that the alibi witnesses suggested by Curtis were not called because Gant knew their testimony would be false.  (FN1)  Gant further testified that he determined not to call certain witnesses who were prepared to testify that Curtis and Harris had had a falling out because their lack of credibility outweighed any impeachment value their testimony might have.

   Finally, Gant testified that his decision not to call Curtis as a witness was based upon his assessment that the best way to defend Curtis was to challenge the credibility of the government's witnesses and point out inconsistencies in the government's case;  his belief that Curtis would perjure himself;  and his determination that Curtis' two prior convictions of armed robbery, which would have been revealed to the jury on cross-examination, would have irreparably damaged the defense.

   The most relevant portion of Curtis' testimony at the hearing was his assertion that he had not admitted his participation in the robbery to Gant. The district judge specifically stated that he believed Gant, not Curtis, on this point.

   On the basis of the testimony, the district court concluded that Curtis had informed Gant of the witnesses who, and evidence which, allegedly would establish Curtis' alibi;  that Gant investigated the asserted defense;  and that Gant properly determined not to present the testimony of the witnesses or the documentary evidence because he believed the former would be perjured and the latter to be fabricated.  The court further concluded that Gant's refusal to permit Curtis to testify was justified under the circumstances.

II

   [1][2] The Supreme Court recently held that the proper standard for judging an attorney's performance under the sixth amendment is that of "reasonably effective assistance."  *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  A convicted defendant must show that counsel's performance fell below an "objective standard of reasonableness."  *Id.*, 104 S.Ct. at 2065.   Specifically, the defendant must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.*, 104 S.Ct. at 2066. The reviewing court then must assess whether, in light of all circumstances, these acts or omissions fell outside the wide range of professionally competent assistance.  The second prong of an ineffective assistance of counsel analysis requires an assessment of prejudice resulting from the specified deficiencies in counsel's performance.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 7

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

The defendant must show that there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding would
have been different.   A reasonable probability is a probability sufficient
to undermine confidence in the outcome.

Id., 104 S.Ct. at 2068.   In other words, "the question is whether there
is a reasonable probability that, absent the errors, the factfinder *1074
would have had a reasonable doubt respecting guilt."  Id., 104 S.Ct. at 2069

III

Curtis' claim that counsel's decision not to pursue an alibi defense is
evidence of ineffective assistance has been abandoned on appeal, assertedly
because Curtis now recognizes the decision as a virtually unassailable
strategic choice based upon counsel's assessments that the alibi witnesses
lacked credibility and that the best defense was to attack Harris'
credibility.  In evaluating his ineffective assistance of counsel claim,
Curtis would have this court focus solely upon counsel's failure to attempt
to impeach Harris with the repair receipt and testimony that Curtis and
Harris had had a falling out, and counsel's refusal to permit him to
testify.

We note parenthetically that Curtis mischaracterizes counsel's decision
not to pursue an alibi defense as a strategic choice.  It was not.  The
district court found that the decision was based upon counsel's conclusion
that the witnesses would offer perjured testimony.  The court noted that
counsel arrived at this conclusion after Curtis' co-defendants informed him
that Curtis and his car were at the "switch site," and after Curtis admitted
his participation in the bank robbery.  The district court made a factual
finding, based upon a credibility determination, that Curtis had admitted
his involvement to Gant, and concluded that in accordance with his ethical
obligation to refrain from knowingly using perjured testimony or false
evidence, counsel refused to present the alibi witnesses or the repair
receipt.

Curtis argues that Gant's conclusion that he, Curtis, was guilty led him
to abdicate his duty to investigate the case and vigorously advocate his
cause;  although Gant determined that the only way to defend Curtis was to
attack Harris' credibility, he failed to present evidence or the testimony
of witnesses that might have cast doubt on the truth of Harris' testimony.

Curtis focuses first upon the repair receipt, which he argues could have
been used to impeach Harris without confronting the perjury issue.  He
contends that Gant overlooked the distinction between the presence of Curtis
at the "switch site" and the presence of his car there.  Although Curtis had
admitted his participation in the robbery, he had not admitted that his car

© 2005 Thomson/West. No claim to original U.S. Govt. works.

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

was used. Because Harris had placed both Curtis and his car at the site, his testimony could have been partially impeached by introducing evidence that Curtis' car was in the repair shop.

[3][4] We would remind Curtis that a tactical decision not to call a particular witness or seek to introduce a particular piece of evidence, if made after adequate investigation and based upon counsel's reasonable determination that damage to his client's case can thereby be avoided, cannot form the basis for a finding of ineffective assistance of counsel. When Gant, who already believed the repair receipt was fabricated, learned that the government had subpoenaed the mechanic who allegedly would testify to the authenticity of the receipt, he reasonably surmised that if he attempted to introduce the receipt, the prosecution would reveal its falsity through the mechanic's testimony. Curtis simply has not "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland v. Washington*, 104 S.Ct. at 2066 (quoting *Michel v. New York*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

[5] Curtis also focuses upon Gant's failure to call witnesses who would have testified to the stormy relationship between Harris and Curtis. Curtis' daughter, Consuella, was prepared to testify that Harris and Gwendolyn Owens, Harris' common-law wife, lived with Curtis; that Curtis also had a relationship with Owens, which created bad feelings between Curtis and Harris; that Harris had made advances at her, Consuella; and that as a result, Curtis had demanded that Harris move out of the house. Consuella's testimony allegedly would have established that Harris' motivation in naming Curtis as a participant was **\*1075** jealousy. In addition, Curtis' mother would have testified that contrary to Harris' testimony, Curtis, Harris, and several other men did not meet at her house to discuss plans for the robbery. Finally, Johnnie Mae McDonald, Curtis' sister, who apparently was implicated in the robbery by Harris but never indicted, desired to testify that contrary to Harris' testimony, Harris never came to her home to pick up "drawings or maps of the bank," and that because Harris lied about her involvement in the robbery, he also must have lied about Curtis' involvement.

The affidavits of McDonald and Consuella Curtis establish that Gant spoke personally with each about the circumstances to which they desired to testify. Although it appears that Gant did not interview Curtis' mother, the substance of her proffered testimony was made known to him by Curtis' sister. We cannot say as a matter of law that Gant's failure to call these witnesses showed incompetence. The interests and biases of all three are readily apparent; Gant's determination that their close relationships with Curtis and, in the case of McDonald, the fact that Harris had implicated her in the robbery, outweighed any impeachment value their testimony might have was a "reasonable professional judgment." *Strickland v. Washington*, 104

© 2005 Thomson/West. No claim to original U.S. Govt. works.

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

.Ct. at 2066.

[6] Lastly, Curtis challenges counsel's refusal to permit him to testify in his own behalf.  The district court found as a matter of fact that Curtis wanted to testify and that Gant refused to put him on the stand.  The district court concluded as a matter of law that Gant's refusal was justified by ethical considerations and trial strategy.  Specifically, Gant, whose usual practice was not to put the defendant on the stand, believed that the defense would be harmed when Curtis' prior convictions were revealed on cross-examination.  And, Gant believed Curtis would perjure himself;  therefore, in accordance with Disciplinary Rule 7-102(a)(4) of the Code of Professional Responsibility, Ill.Rev.Stat. ch. 110A, Canon 7 (1980), which prohibits a lawyer from knowingly using perjured testimony, Gant refused to allow Curtis to testify.

Of key importance to the disposition of this claim is this circuit's decision in *Alicea v. Gagnon*, 675 F.2d 913, 923 (7th Cir.1982), in which it was held that a criminal defendant has a constitutional right, rooted in the fifth, sixth, and fourteenth amendments, to testify in his own behalf.  In so holding, we overruled in part, *Sims v. Lane*, 411 F.2d 661 (7th Cir.1969). In *Sims*, the petitioner claimed that counsel denied him his right to testify at trial; (FN2)  counsel did so because they "did not believe that the matters the defendant asserted he would testify to were true."  *Id.* at 662. (FN3)   The *Sims* court held that a defendant has no federal constitutional right to testify in his own behalf:

    To the contrary, the federal rule seems to be that the exercise of this
    right is subject to the determination of competent trial counsel and
    varies with the facts of each case.

*Id.* at 664.   The decision whether to have the defendant testify was treated as a matter of trial strategy, an inappropriate basis for a constitutional ineffective assistance of counsel claim.  This court stated in *Alicea* that *Sims* was overruled "to the extent that it failed to acknowledge a federal constitutional basis for a defendant's right to testify in his own behalf."   *Alicea v. Gagnon*, 675 F.2d at 922.   One issue presented here is whether recognition of the constitutional dimensions of a defendant's right to testify mandates the conclusion that the right may not be waived by counsel as a matter of trial strategy.

**\*1076**  [7] Certain constitutional rights are so fundamental that they are deemed personal to a defendant, and he alone may decide whether these rights will be exercised or waived.  Included are:  the decision whether to plead guilty or proceed to trial, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969);  the decision whether to be tried by judge or jury, *Adams v. United States ex rel. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 10

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

.Ed.2d 268 (1942); the decision whether to appeal, *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and the decision whether to forego the assistance of counsel, *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In *Wright v. Estelle*, 572 F.2d 1071, 1077-80 (5th Cir.1977) (*en banc* ), Judge Godbold, dissenting from the majority decision, which assumed the existence of a personal constitutional right to testify for the purpose of applying a harmless error analysis to the denial of that right, concluded that the right to testify in one's own behalf also is of constitutional dimension, is personal to the defendant, and may not be waived by counsel under the rubric of trial strategy. Like Judge Bauer, who in overruling *Sims* in *Alicea* found Judge Godbold's dissent in *Wright* "particularly persuasive authority that *Sims* is obsolete," we find that same dissent persuasive on the issue whether the right to testify in one's own behalf is a personal one which may not be waived by counsel.

We recognize that the exercise of certain constitutional rights, such as a defendant's sixth amendment right to present evidence and witnesses on his behalf, are subject to control and direction by defense counsel; however, we do not believe the decision whether the defendant will testify falls within this category. *See Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2510 n. 1, 53 L.Ed.2d 594 (1977) (Burger, J., concurring) ("Only such basic decisions as whether to plead guilty, waive a jury, or testify in one's own behalf are ultimately for the accused to make."). *See also* ABA Standards for Criminal Justice, The Defense Function § 4-5.2 (1980). We believe that a defendant's personal right to forego the assistance of counsel and conduct his own defense, recognized in *Faretta*, also encompasses his personal right to testify in his own behalf as a part of that defense. That a defendant's decision to do so may be unwise from a tactical standpoint also may be said of a defendant's personal decision to proceed to trial or to invoke his right to a trial by jury. But, as Judge Godbold put it, "[t]he wisdom or unwisdom of the defendant's choice does not diminish his right to make it." *Wright v. Estelle*, 572 F.2d at 1079.

[8] When a defendant asserts that he desires to exercise his constitutional right to testify truthfully, counsel's duty is to inform the defendant why he believes this course will be unwise or dangerous. If a defendant insists on testifying, however irrational that insistence might be from a tactical viewpoint, counsel must accede. We hold that a defendant's personal constitutional right to testify truthfully in his own behalf may not be waived by counsel as a matter of trial strategy. Any remnant of the *Sims* decision that suggests otherwise is no longer viable.

[9] It is equally clear, however, that a defendant has no constitutional right to testify perjuriously in his own behalf. The specifics of what Curtis wanted to testify to were revealed by him at the evidentiary hearing: "I would have stated that I was in Chicago all day on the 19th of November."

© 2005 Thomson/West. No claim to original U.S. Govt. works

*counsel knew the defendant would perjure himself.*

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

The district court made a factual finding, to which we previously referred, that Curtis had admitted his participation in the robbery to Gant. Because it seems apparent that Curtis would have testified perjuriously, counsel's refusal to put him on the witness stand cannot be said to have violated Curtis' constitutional rights.   (FN4)

*1077. The district court's judgment denying Curtis' motion to vacate his conviction is AFFIRMED.

(FN*) After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case.  The notice provided that any party might file a "Statement as to Need of Oral Argument."  *See* Rule 34(a), Fed.R.App.P.;   Circuit Rule 14(f).  No such statement having been filed, the appeal has been submitted on the briefs and record.

(FN1.) The affidavits attached to Curtis' section 2255 motion suggest that the following alibi witnesses would have testified that Curtis could not possibly have participated in the 2.00 p.m. bank robbery in St. Anne, approximately 80 miles from Chicago.  Gloria Kirkpatrick, who lived with Curtis, was prepared to testify that he awoke at 12:30 p.m. and then shaved and showered.  Yvonne Riley, a friend of Curtis' sister, was prepared to testify that she visited Curtis from before noon until 12:45 p.m. at his home on the west side of Chicago.  Ezell Jenkins, Curtis' friend and an ex-convict, would have testified that at Curtis' request, he took Curtis' car, which was in perfect condition, to the repair shop on November 18, 1976, and retrieved it on November 20, 1976.  He further would have testified that on the day of the robbery, he was with Curtis at Curtis' home until "well after" 1:00 p.m. Minnie Taylor, Curtis' hair stylist, was prepared to testify that Curtis had a 2:00 p.m. appointment at her salon on the west side of Chicago, and that he arrived at the salon at 2:30 p.m. to cancel the appointment.  Finally, Frank Jurado, the mechanic, would have testified that Curtis' car was in his shop for repairs from November 18 to November 20.  He also stated in his affidavit that he never received a call from Gant, although he had informed Curtis' sister that he would testify on Curtis' behalf.

(FN2.) The *Sims* court noted that because petitioner had not advised the trial court that he wished to testify in his own behalf, thereby permitting the court to rule on the asserted right to testify, petitioner's quarrel was with trial counsel.  The claim was treated as one of ineffective assistance of counsel.  *Sims v. Lane*, 411 F.2d at 665.

(FN3.) At an evidentiary hearing on Sims' petition for a writ of habeas corpus, counsel testified that Sims' testimony "would have contradicted the testimony of every State witness and would have been inconsistent with the theory of the defense."  *Sims v. Lane*, 411 F.2d at 663.

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Page 12

742 F.2d 1070, U.S. v. Curtis, (C.A.7 (Ill.) 1984)

FN4.) We emphasize that we address only the issue whether counsel's actions infringed upon Curtis' constitutional right to testify truthfully in his own behalf.  Whether counsel's response to the situation conformed to professional standards is not an issue before us.  We note, however, the approach suggested by the ABA Standards for Criminal Justice, The Defense Function § 4-7.7 (1980) (proposed standard):

(a) If the defendant has admitted to defense counsel facts which establish guilt and counsel's independent investigation established that the admissions are true but the defendant insists on the right to trial, counsel must strongly discourage the defendant against taking the witness stand to testify perjuriously.

(b) If, in advance of trial, the defendant insists that he or she will take the stand to testify perjuriously, the lawyer may withdraw from the case, if that is feasible, seeking leave of the court if necessary, but the court should not be advised of the lawyer's reason for seeking to do so.

(c) If withdrawal from the case is not feasible or is not permitted by the court, or if the situation arises immediately preceding trial or during the trial and the defendant insists upon testifying perjuriously in his or her own behalf, it is unprofessional conduct for the lawyer to lend aid to the perjury or use the perjured testimony.  Before the defendant takes the stand in these circumstances, the lawyer should make a record of the fact that the defendant is taking the stand against the advice of counsel in some appropriate manner without revealing the fact to the court.  The lawyer may identify the witness as the defendant and may ask appropriate questions of the defendant when it is believed that the defendant's answers will not be perjurious.  As to matters for which it is believed the defendant will offer perjurious testimony, the lawyer should seek to avoid direct examination of the defendant in the conventional manner;  instead, the lawyer should ask the defendant if he or she wishes to make any additional statement concerning the case to the trier or triers of the facts.  A lawyer may not later argue the defendant's known false version of facts to the jury as worthy of belief, and may not recite or rely upon the false testimony in his or her closing argument.]

*Trial counsel did not ever almost follow this strategy in the present case.*

© 2005 Thomson/West. No claim to original U.S. Govt. works.

Plaintiff's name:

JOSEPh HORNE
PETiTiONER.

vs.

Defendant's name:

ROBERT HOREL,
WARDEN, RESPONDENT

Case Number:

1 C.07.4592 -SBA

PROOF OF SERVICE

I, the undersigned, hereby certify that I am over the age of eighteen years and ___ a party

to the above-entitled action.

On August 11th , 20 08 , I served a copy of Federal writ

of Habeas corpus. , by

placing said copy in a postage paid envelope addressed to the person hereinafter listed, by

depositing said envelope in the United States Mail:

(LIST ALL DEFENDANTS SERVED IN THIS ACTION)

Attorney General
455-Golden Gate Avenue suite 11000
San Francisco, CA 94102 - 7004

I declare under penalty of perjury that the foregoing is true and correct.

_John Mi____

(Signed)

MR. Joseph D. Horne
#V-84328  B-8/118 (K.V.S.P.)
P.O. Box-5102
Delano, CA 93216



Office of The clerk U.S.
District Court Northern
District of California
1301 clay st. Suite # 400S
Oakland, CA 94612-5212

"Leaal Documents"

Kern Valley State Prison
Facility b, building 8

8/9/96 of Novall

Leaal Documents.